## GEORGE H. POOLE v. THE STATE.

### No. 2815.   Decided October 28, 1903.

**1.—Continuance—Diligence—New Trial—Practice.**

Where, on a trial for murder, a continuance is sought to obtain the testimony of an absent witness who had been summoned but was not present, and who, it was contended, was with defendant at the time of the shooting, and by whom he proposed to corroborate his own testimony, viz., that he, "appellant was coming out of the front door of Baker's saloon when he saw deceased in front of said door, who immediately made a demonstration as if to draw a pistol, when he shot him." Held, the testimony was unquestionably upon a vital issue and therefore material to appellant's defense; and as other absent witnesses, appellant contended, would corroborate him as to what occurred at the time, or immediately before the difficulty and also show what certain other participants were doing at the time, there being a suggestion of a conspiracy between appellant and them to bring on the difficulty, the case should have been continued on account of this absent testimony; or a new trial should have been granted after the testimony was developed and conviction obtained.

**2.—Same—Juror—Qualification of—Challenge.**

Where a juror has not paid his poll tax, as required by law, and is excused by the court of his own motion, over objection of defendant, Held, while the fact of nonpayment of poll tax goes to the qualification of the juror, the same is ground for challenge, but not an absolute disqualification.

**3.—Same—Statement of Case.**

Where the court refused to require the attorney for the State to make a statement of what he would undertake to prove prior to the introduction of evidence; Held, no error (citing article 697, C. C. P., and Holsey v. State, 24 Texas Crim. App., 35).

**4.—Practice—Retiring Jury—Prejudice.**

While the attorney for defendant was making a statement in rebuttal to that made by the district attorney in regard to the admission of certain testimony as to a conspiracy, the court retired the jury. Held, that while both statements should have been presented to the court, the jury might well have been present at both and no prejudice resulted from such action.

**5.—Evidence—Admissibility of Threats.**

Where it was sought to introduce the acts and declarations of a coconspirator as to a former difficulty, at which appellant was not present, the same were not competent. If, however, the threat was of future or further violence toward deceased, and was agreed to by appellant, it was admissible.

**6.—Evidence—Former Difficulty.**

Where it was sought to introduce the details of a former difficulty, in which deceased killed the brother of appellant, the same being undoubtedly the origin of the difficulty resulting in this homicide for which appellant was being tried, Held, the same were not admissible in favor of appellant, the rule being that details of a former difficulty even between the same parties, is inadmissible, and much more so where the difficulty is between other parties, and would tend to shed no light on this homicide.

**7.—Murder—Negative Testimony—Demonstrations by Deceased.**

It is contended that it was error for the court to refuse, on the ground that same was negative testimony, to allow defendant to prove that deceased may have made some demonstration and the witness not have seen it. Held, the contention is correct; the testimony of the witness certainly tended to show that deceased was doing nothing, and it was permissible, on cross-examination, to show, by said witness, that he was not looking at deceased prior to the first shot, and did not see whether he made any demonstration or not.

**8.—Same—Practice—Admonishing Counsel.**

Where counsel for appellant objected to certain testimony, and the court in ruling on same used the following language, "I wish to state right here that whether State's counsel objects to this question or not, the court is not going to permit any question of that kind, which can only bring out negative testimony. I will stop you every time," etc. Held, that while it may be permissible at times to admonish against asking questions that are obviously illegal and objectionable, ordinarily the duties of the trial judge will be best con-

served by merely ruling on the admissibility of the testimony, and, if necessary, stating his reasons therefor.

#### 9.—Same—Self-Serving Declarations.

Where, on a trial for murder, defendant proved by one of his witnesses that the witness met him at a saloon about an hour or so before the homicide occurred; that the witness and himself, together with another party, were drinking and talking, and that the witness told defendant that he had heard Jett threaten him that morning. That immediately thereafter they started down the street, and he asked defendant if he was not coming. In this connection defendant proposed to prove that he stated to witness at that time that "he did not want to get cooped up in one of those saloons by Jett and his crowd." On objection by the State that said remarks were self-serving, the court sustained the objection. Held, the declaration being anterior to the difficulty, and tending to show defendant's then condition of mind, and his apprehension of trouble with and desire to avoid deceased, the same should have gone to the jury as tending to shed light on the frame of mind of defendant toward deceased, the difficulty occurring an hour or so thereafter. Brooks, Judge, dissents from this proposition, holding same be self-serving.

#### 10.—Same—Opinion Evidence.

Where appellant attempted to show that one C. P. told him (appellant) on the same day, and before the meeting, not to have any violence with deceased, that deceased would shoot him down like a dog, Held inadmissible as being merely the opinion of an outsider.

#### 11.—Threats by Deceased.

Where a certain threat made by deceased had been admitted, viz., that he "was going to send every damned one of them (the Pooles) feet foremost before he left the street," Held, as was done, competent to show by the witness, the conversation and acts of the parties, witness and deceased, which caused deceased to make use of the expression.

#### 12.—Same—Conspiracy—Practice.

Where the theory of the State was stated to the court in the presence of the jury, viz., "that there was a conspiracy between defendant, Grover and Claude Pool," and defendant proposed to prove before the jury that the indictments against the said G. and C. Poole had been nolle prossed by the district attorney on the ground that there was no testimony showing their connection with the killing, and upon objection this testimony was excluded; Held, the ruling was correct, the testimony not being competent or admissible. And held further that the State, having introduced no testimony on this subject, the same was not admissible in rebuttal; and, in the absence of testimony in response to the statements of the district attorney, objections should have been made, or a charge asked expunging the same from consideration by the jury.

#### 13.—Charge of Court—Self-defense—Apparent Danger.

Where the court, in applying the law to the facts, predicated all his charges on self-defense on an "actual attack" by deceased; and where, from the evidence of appellant, it was shown that there was no actual attack by deceased at the time of the homicide, but only preparation and demonstration to attack; Held, the court should have instructed the jury distinctly that in order to assert his right of self-defense it was not necessary for appellant to await an actual attack, but that if deceased made an attempt to draw a pistol, and appellant believed that he was drawing it for the purpose of making a deadly assault on him, he had the right to anticipate such movement and shoot in self-defense.

#### 14.—Same—Evidence.

From all the facts of the case, it was held that the court below was not authorized to charge on an attack, by deceased, of a violent and dangerous character, less than an assault with intent to kill or do serious bodily injury.

Appeal from the District Court of Jefferson, on change of venue from Orange County. Tried below before Hon. W. H. Pope.

Appeal from a conviction of murder in the second degree; penalty, 25 years imprisonment in the penitentiary.

Appellant, George H. Poole, was indicted by the grand jury of Or-

ange County, on the 24th day of September, 1902, by separate indictment (there being two other parties also separately indicted for the same murder) for the murder of James A. Jett, who was, at the time of his death, city marshal of the city of Orange, by shooting him with a pistol.

At the March term, 190......, of the District Court of Orange County, defendant filed his motion for a change of venue, after having been required by the court to make his plea to the indictment, which he did, pleading "not guilty" thereto.

The motion for change of venue alleged: "That there exists in Orange County where said prosecution was commenced, so great a prejudice against him the said George H. Poole that he can not obtain a fair and impartial trial of said cause in said county." 2. "There is a dangerous combination against him, the said George H. Poole, instigated by influential persons, by reason of which he can not expect a fair trial in said Orange County."

This application and motion for change of venue and the evidence adduced upon same, and argument of counsel thereon having been heard by the court, the same in so far as the allegation of "a dangerous combination," etc., was concerned, was not sustained, and was overruled and refused; but, upon the other ground stated, the application being supported by the evidence adduced, the same was sustained and the case removed for trial to the County of Jefferson, the courthouse of which was nearest to that of Orange County, the said county being in the adjoining district.

The case was tried and judgment entered in the District Court of Jefferson County on the 12th day of April, 1903, and appellant was found guilty of murder in the second degree and his punishment assessed at 25 years confinement in the penitentiary. Motion for new trial was overruled and judgment entered accordingly, from which appellant appealed to this court.

The following statement, which is substantially correct, is taken from the brief of appellant and is not disputed:

On the 12th day of May, 1902, in Orange County, Texas, James A. Jett, who at the time was city marshal of Orange, was shot and killed at about 4:30 o'clock p. m. in a shooting affray in which said Jett and his brother-in-law W. R. Rogers and others on Jett's side took part, and in which appellant, Geo. H. Poole, fired a shot at said Jett, and other shots were fired on the Poole side by Claude and Grover Poole, who joined in the shooting after several shots had been fired.

The uncontradicted testimony shows that some time in March, 1902, J. A. Jett killed Tom Poole, a brother of appellant, and that from the date of said killing to the date of this homicide Jett and appellant were not on speaking terms, but that no clash had occurred between them, and nothing had occurred up to the Saturday previous to this homicide to cause any direct ill feeling between the parties. The uncontradicted evidence also shows that some time about 10 or 11 o'clock p. m. of Saturday,

May 10, 1902, one Stanley Jett, son of said J. A. Jett, and who was about 20 years old, and some thirty pounds heavier than appellant, and appellant, who was at the time about 23 years old, had a difficulty in the saloon of Robinson & Watson in Orange, which amounted to no more than an ordinary fist fight, and that after said fight Stanley Jett was taken to his home in a carriage by John Robertson, the then sheriff of Orange County, and L. T. Grubbs, said carriage being driven by Jake Peterson. The uncontradicted evidence also showed that deceased, Jett, on being informed of the fight between his son and appellant, became very angry and very much incensed, not only at appellant but at his whole family, and declared that they should all be shot down, from the mother down, like dogs, and that he intended to do it. The uncontradicted evidence also showed that on Sunday morning, May 11th, George Pool left Orange and went to Port Arthur, returning late that night, and that he and Jett, deceased, did not meet after said affair of Saturday night until some time about 9 o'clock on the morning of the day of the homicide. The uncontradicted evidence also shows that on Sunday morning Jett was on the streets of Orange in an angry and incensed condition of mind toward appellant and his family, and that he declared to the witness F. G. Franks that it would not satisfy him to prosecute appellant for the affair with his son; that things had gotten too hot for that since the affair of Saturday night, and that he and the Pooles could not live in the same town, and that he was going to run them out of it, and it also shows that said Franks was the father of one of the policemen of Orange, who worked at night and slept in the daytime, and with whom the witness Franks lived; that deceased insisted that the witness should go home and tell his son to come to town and be with him; that he expected trouble that day with the Pooles, and that to the witness' remonstrances and advice not to bring on trouble, deceased would only insist that the witness go on and do as he, deceased, had requested him to do. The uncontradicted evidence further shows that at the time appellant and Jett met on the day of the homicide, that is their first meeting that day, which was in front of Robinson & Watson's saloon, that deceased cursed and abused and villified appellant, and told him to fix himself, that one of them would go home feet foremost that day; that appellant made no reply, but as soon as he could he went into said saloon, and that he was not then armed, and did not arm himself until some hours afterwards, and not until after Ben Soileau had told him that Jett had uttered threats against appellant, and not until after he had observed Jett's conduct on the street to be drunken and boisterous, and not until after he had avoided Jett a number of times. The uncontradicted evidence further shows that to several witnesses Jett declared on the day of the homicide that he was after revenge, and that he would not go home that day until the matter was settled one way or the other, and to the sheriff, John Robertson, he declared, not over five minutes before the shooting occurred, that he knew appellant was in Baker's saloon

(in front of which the shooting occurred), and that when appellant stuck his head out of the door he (Jett) intended to shoot if off. It is also uncontradicted that Jett promised Sheriff Robertson just before the shooting, when Robertson was called by a message from the commissioners court to the courthouse, not to go over about Baker's saloon during the absence of Robertson, which he told Jett would not be exceeding five minutes, and also that Archie Looney walked to the middle of the intersection of the streets between McKay & Griffith's saloon, where Sheriff Robertson had left deceased, and Baker's saloon, and that on their way there Jett told Looney that the matter had to be settled one way or the other that day. It was also uncontradicted that Jett had been drinking heavily all day, and that he was very much under the influence of liquor. It is also uncontradicted that W. R. Rogers, the brother-in-law of Jett, and who was armed and who participated in the shooting, was at the time Sheriff Robertson left Jett, standing in Fourth Street, south of the front end of Baker's saloon (which faces north), talking to another man, and that he continued there until Jett walked across the street and went to Rogers, and that Rogers and Jett then moved up to a telegraph or telephone pole that stood in the outer angle of the sidewalk, out a little to the right, northeast of the corner of the building from the front of Baker's saloon, and that Pevito, the man who had been with Rogers, moved off when Jett went to Rogers, and that Rogers and Jett took up a position by said telegraph pole about a minute or such matter before the shooting commenced. The uncontroverted testimony also shows that appellant was in said Baker's saloon some fifteen or twenty minutes or more before the shooting; that he was in his usual frame of mind, and was pleasant, and was not intoxicated, and that he and some acquaintances were engaged in ordinary conversation, and that just the moment before the shooting began appellant, who had treated the others, had just drank and paid for a glass of beer, and that the instant he started out of the saloon the shooting started. From this point the evidence is conflicting, but the testimony of every one of the dozen or more witnesses who were put on the stand, except R. M. Johnson, both for the State and defense, shows that Jett and Rogers fired the next shots after the first, and that it was not until after appellant had left the scene of the shooting and after Jett and Rogers had fired two or more shots that Claude and Grover Poole took any part in the shooting. One witness for the State testified that at the time the shooting began deceased was standing with his left hand on the telegraph pole, and leaning against the pole and facing west, the Baker saloon facing north. The testimony of A. T. Chenault, for the State, was that at the time the first shot was fired deceased was standing facing north, with his back to Baker's saloon. R. M. Johnson, for the State, testified that at the time the shooting commenced deceased was leaning with his back against the telegraph pole, with his hands folded on his stomach in front of him and that he was talking to some one the witness did not

then know.  Charles J. Shumate testified for the State that he was talk-
ing to deceased, and that deceased was standing with his back to said
pole, with his hands crossed behind him, and looking west at the time
appellant fired.  Adams said no one except Rogers was talking to Jett,
and Chenault said some one was talking to him besides Rogers, but that
such person was much larger than Shumate, who is unusually small.
Appellant, Claude Poole, Frank Vickery and Charles Smith testified that
at the time the first shot sounded deceased was about midway between said
pole, which was out nineteen feet from the corner of Baker's building,
and the north or front door of Baker's saloon building.  The State's
testimony was that appellant fired from the east door, up near the front
of the building, and appellant's was that he fired from the north door,
nearest the corner of the building, and appellant testified that he did
not know deceased was in front of Baker's, and that when he and Walter
McLain (one of the absent witnesses) started out of the saloon, and
had stepped in front of the screen that sat between the front doors and
the position appellant and the others were in the saloon (it having
been also shown that said screen sat about six feet back from the front
doors and prevented a view either into the saloon from the outside or
out of the saloon from the inside, through the front door, and that Jett
would not have been in sight from any position in the saloon from the
side door until a person going to said door would get entirely to it;
the testimony also shows that the bar counter was on the right as you
enter the saloon from the front, and was on the other side of the house
from the east door), he saw deceased and Rogers advancing toward the
saloon, and both about midway of the sidewalk, and that Jett instantly,
on appellant coming into sight, threw his left hand to his pistol holster,
which he wore in plain view on his right side, and his right hand upon
the handle of said pistol, and that Rogers also started to draw his pistol,
and that at that juncture he, appellant, believing that Jett and Rogers
meant to kill him, drew his own and fired, and that the instant he fired
both Jett and Rogers fired, one of the shots going through the lapel of
appellant's coat and the other cutting his coat across the back as he
jumped behind the wall next to the door; that he retreated through
the saloon and out of it the rear way, and did not know until afterwards
what else transpired, or who took part in the shooting after he left.

Jett and Rogers backed towards McKay & Griffith's saloon, and con-
tinued to shoot until they emptied their sixshooters, and during the
shooting by Jett and Rogers, C. D. Edwards also joined them in shoot-
ing towards Greenwall's store, next to Baker's saloon, where Claude
Poole had taken refuge, and where Grover was working.  After emptying
his pistol, Jett went into McKay & Griffith's saloon, and soon fell.  He
received a wound in the left side of the chest, about one and one-half
inches to the left of the left nipple and just below it, which went prac-
tically straight through the body from front to back.  He died within
half an hour from this wound.  After the shooting had ceased, Lon

Craft ran out of the McKay & Griffith saloon and fired three shots in the direction Jett and Rogers had been shooting.

On the 24th day of September, 1902, the grand jury of Orange County returned separate indictments against appellant, Claude and Grover Poole, charging each of them with the murder of J. A. Jett. At said September term all of said causes went over until the March term, 1903, for want of time in which to try them, there being only about three days of the term from the time they were reached. Appellant had been admitted to bail before indictment upon habeas corpus hearing had before the Hon. J. D. Martin, district judge at Beaumont, and after indictment upon habeas corpus before the District Court of Orange County, all of the parties were admitted to bail, Claude and Grover having been admitted to bail without a hearing before indictment. On the 9th day of March, 1903, said three causes came on regularly for trial, and appellant having theretofore filed his affidavit and motion to have Claude Poole and Grover Poole tried first, the case of Claude Poole was called, and the district attorney in open court stated that he would enter a nolle in said case on the ground that there was no evidence in said cause against Claude upon which the State could claim a conviction. The case of Grover Poole was then called, and the district attorney made the same statement as to it, and both of said cases being nolle prossed the case of appellant then came on, and appellant's motion to change the venue being heard, was granted, and the cause transferred to the District Court of Jefferson County, Texas. On April 6, 1903, said cause came on for trial in said last court, and the State having announced ready for trial, and appellant being called upon to announce, announced not ready, because of the absence of the following thirteen witnesses, viz.: Bernie Looney, Walter Austin, Frank Sessions, C. K. Baxter, Walter McLain, G. H. Mullins, Joe Sessions, J. W. Simpson, W. C. Woods, James Walker, Milo Stark, Claude Poole and Bernie Gallier, all of whom, save and except Milo Stark and Bernie Gallier, were under process of the court, having been duly served with subpœnas, and the witness G. H. Mullins had been attached and his bond taken, and appellant asked for the forfeiture of his bond. During the trial, by process immediately sued out by defendant for said absent witnesses as soon as their names were called, and said motion presented and overruled, the witnesses, Joe Sessions, J. W. Simpson, W. C. Woods, James Walker and Claude Poole were brought into court and testified in the case, leaving Bernie Looney, Walter Austin, Frank Sessions, C. K. Baxter, Walter McLain, G. H. Mullins and Bernie Gallier absent. The State proffered defendant the privilege of reading the testimony of G. H. Mullins as given upon the habeas corpus hearing before Judge Martin, and taken down by stenographer C. W. Howth, and said testimony was so read to the jury. The motion was overruled and appellant forced to trial, to which he excepted, and he immediately sued out the process above stated for said absent witnesses.

Thereafter, on the 8th day of April, when said last process was returned, and it was seen that said absent witnesses could not be brought in, appellant renewed his motion for a continuance, which was also overruled, and to which he also excepted.

*Brockman, Kahn,* and *E. T. Branch,* for appellant.—Where diligence is shown, and the evidence stated in the application is material, it is error to overrule a first application for a continuance. . Miller v. State, 18 Texas Crim. App., 232; Holder v. State, 13 Texas Crim. App., 601; Phipps v. State, 34 Texas Crim. Rep., 560; Wilson v. State, 18 Texas Crim. App., 578; Adams v. State, 19 Texas Crim. App., 1; Hollis v. State, 9 Texas Crim. App., 643.

But even if the diligence was not sufficient, it was not controverted by the State, and it was good on its face, and it was therefore admittedly sufficient. Code Crim. Proc., art. 601; Jetton v. State, 17 Texas Crim. App., 311; Walker v. State, 13 Texas Crim. App., 619; Ball v. State, 7 Texas Ct. Rep., 105.

If the diligence was not sufficient, then if on motion for new trial, in the light of the evidence adduced upon the trial, the absent testimony is shown to be material, and its want of probability of truth not being shown, defendant would nevertheless be entitled to a new trial. Stanley v. State, 16 Texas Crim. App., 392; Bullock v. State, 12 Texas Crim. App., 42; Ratliff v. State, 12 Texas Crim. App., 330; Proctor v. State, 65 S. W. Rep., 368; Adams v. State, 19 Texas Crim. App., 1; Hollis v. State, 9 Texas Crim. App., 643; Miller v. State 18 Texas Crim. App., 231.

The court erred in refusing defendant's request to require the State, before beginning its evidence, to state to the jury the nature of the accusation, and what the State expected to prove in support of said accusation. Code Crim. Proc., art. 697, subdiv. 3.

The jurors were not disqualified by reason of not having paid said poll tax; because the amendment to section 2 of article 6 of the Constitution only provides that the tax shall be paid before the qualified elector offers to vote, and in no sense or way does it refer to the qualifications of an elector, but only makes the payment of the tax an incidental penalty against the delinquent, for the immediate time only, just as does failure to register in a city where registration is in force.

The jurors when called to the stand on voir dire, stated that they had not paid said poll tax as required by said amendment, and the court thereupon excused them, when defendant objected to their being excused, and asked each of them such other questions as tended to show whether or not they were qualified jurors, aside from said poll tax matters, and each and all showed that they were qualified to sit in the case, having no opinion, bias or prejudice, and were in every way fair jurors, but the court nevertheless stood them aside without challenge from either State or appellant, and over appellant's objection.

Said jurors, even if they were not qualified by reason of not having

paid said poll tax, were subject to challenge for cause only by the State or the defendant, and the State not having challenged them, and appellant having objected to their being stood aside, and insisting upon his right to pass upon them, and that he be given an opportunity to take them on said jury, it was not within the province of the court to stand them aside of his own motion over defendant's protest and objection, and because they were qualified jurors, that is, not subject to challenge for cause on any other ground than the non-payment of poll tax, if that be a legal ground. Code Crim. Proc., art. 673, subdiv. 3, 4, 5; Code Crim. Proc., art. 676; Greer v. State, 14 Texas Crim. App., 179; Sewel v. State, 15 Texas Crim. App., 56; Wade v. State, 12 Texas Crim. App., 358; Hill v. State, 10 Texas Crim. App., 618; Code Crim. Proc., art. 22; People v. Mather, 4 Wend., 231.

Subdivision 5 is as follows: "5. That he is insane, or has such defect in the organs of seeing, feeling or hearing, or such bodily or mental defect or disease as render him unfit for jury service."

There are thirteen distinct grounds of challenge for cause to a juror, but all may be waived except the above three. Article 676 Code of Criminal Procedure, is as follows: "No juror shall be impaneled when it appears he is subject either to the third, fourth or fifth clause of cause for challenge in article 673, although both parties may consent." Article 22 of the Code of Criminal Procedure is as follows: "The defendant to a criminal prosecution for any offense may waive any right secured to him by law except the right of trial by jury in a felony case." But by article 676, supra, the law provides that the three disqualifying causes set up in subdivisions 3, 4 and 5 of article 673, disqualifies a juror ipso facto, and that such disqualification can not be waived, but all others, including the first subdivision of said article, which is as follows: "1. That he is not a qualified voter in the State or county, under the Constitution and laws of the State." Therefore the court had no authority to stand said jurors aside, because same was an infringememnt upon defendant's rights under the law and ground for reversal. Wade v. State, 12 Texas Crim. App., 370.

What Grover Poole did to or said to Stanley Jett at the time of the difficulty on Saturday night could not bind appellant in this case, because it was the act of a person other than himself, and did not involve deceased, and was in no way inspired by himself, and could in no way illustrate or shed any light on appellant's motives and actions, or on the homicide on Monday following said difficulty of Saturday night. And same was a distinct act of Grover Poole, in no way suggested by appellant. Menges v. State, 25 Texas Crim. App., 710; Marwilsky v. State, 9 Texas Crim. App., 337; Washington v. State, 16 Texas Crim. App., 376.

The court is prohibited by statute from commenting upon or discussing the weight of evidence or its bearing in the case in ruling upon the admissibility of evidence offered, and he should simply decide whether

or not it is admissible; nor shall he, at any stage of the proceedings, previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case. Code Crim. Proc., art. 767; Kirk .v. State, 35 Texas Crim. Rep., 224; Bradshaw v. State, 70 S. W. Rep., 215; McCullar v. State, 36 Texas Crim. Rep., 213; Reason v. State, 30 S. W. Rep., 780; Crook v. State, 27 Texas Crim. App., 241; Secrest v. State, 40 S. W. Rep., 988; House v. State 57 S. W. Rep., 825.

The court erred after having permitted the county attorney to state to the court in the hearing of the jury what the theory of the State was with reference to an alleged conspiracy between defendant and Claude and Grover Poole, and what he claimed to have been shown by the testimony already adduced upon that phase of the case; refusing to permit the jury to remain and hear the reply of defendant's counsel to said argument and statement, and in retiring the jury when defendant's counsel started to reply to said argument, and in keeping them out until defendant's said counsel had finished his answer to the county attorney's argument. · Rutherford v. State, 67 S. W. Rep., 100; House v. State, 57 S. W. Rep., 825.

The court erred in the following particulars, viz: Defendant's witness Soileau having testified as follows: "I met defendant at saloon about 2 o'clock on the day of the homicide. He, Dave Craft and I were taking a drink," etc. * * * "I started down the street and asked defendant if he was not going down too, and defendant replied no, that he did not want to get cooped up in one of those saloons by Jett and his crowd," in excluding said testimony, upon motion of State on the ground that it was self-serving.

Appellant's testimony shows that he had avoided deceased, and the witness, Soileau, had just told appellant that deceased was threatening him around town, and had told appellant to be on his guard, and appellant's declaration was not in the nature of a self-serving declaration, but rather declaratory and explanatory of the view that he had of deceased's purpose towards him, and the danger that existed against him, and also showed that he did not wish to put himself in an attitude where deceased could force a difficulty upon him. Berry v. State, 30 Texas Crim. App., 423; Lewallen v. State, 33 Texas Crim. Rep., 412; Koller v. State, 36 Texas Crim. Rep., 496; Hobbs v. State, 16 Texas Crim. App., 517; Irby v. State, 25 Texas Crim. App., 203; Simmons v. State, 31 Texas Crim. Rep., 227; Williams v. State, 70 S. W. Rep., 756.

The court erred in the following particulars, to wit: Defendant's witness B. H. McDaniel being on the stand, and having stated with reference to a conversation with Jett at about 2 o'clock on the day of the killing, that Jett spoke very bitterly of defendant and the Poole's generally, and then further stated as follows: "He told me he was going to send every damned one of them home feet foremost before he left the street;" in excluding the following question asked the witness by defendant. "How did Jett come to make that last expression, what called

it forth?" and in excluding the witness' answer, which would have been that he urged deceased to go home, and pleaded with him that he was drinking and mad, and that when he slept over it he might not feel so violently inclined towards defendant and his family in general.

Said testimony was admissible as a part of the *res gestae* of deceased's declarations to the witness and also upon the issue of deceased's motives toward appellant, and upon the issue of who started the difficulty, as tending to explain the actions of deceased at the time of the difficulty, and as tending to show that he probably did as appellant claims he did at the moment appellant emerged from Baker's saloon, and as tending to explain the purpose for which deceased went over from McKay & Griffith's saloon, after having promised the sheriff not to do so, and having with his brother-in-law taken up the position in front of Baker's saloon at the telegraph pole. Stapp v. State, 1 Texas Crim App., 734; Turner v. State, 46 S. W. Rep., 830; Williams v. State, 10 Texas Crim. App., 528; Stockman v. State, 24 Texas Crim. App., 387; Davis v. State, 3 Texas Crim. App., 91.

By bill of exception twentieth he complains of the action of the court in giving the following two paragraphs in its charge, to wit:

"Every person is permitted by law to defend himself against any unlawful attack reasonably threatening injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack made in such manner as to produce a reasonable expectation or fear of death or some serious bodily injury.

"If you believe from the evidence beyond a reasonable doubt, that the defendant, with a deadly weapon or instrument, reasonably calculated and likely to produce death by the mode and manner of its use in a sudden transport of passion, aroused without adequate cause, and not in defense of himself against unlawful attack reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill did shoot with a pistol and thereby kill James A. Jett as charged in the indictment, you will find him guilty of murder in the second degree and assess his punishment at confinement in the State penitentiary for any period that the jury may determine and state in their verdict, provided it be for not less than five years."

Both of said paragraphs are unsupported and were unwarranted by any evidence in this case, and both impose a burden upon defendant that the evidence does not justify, in that said first paragraph defines one to be excusable only, when "homicide is justified in defense of one's person against any unlawful and violent attack, made in such manner as to produce a reasonable expectation or fear of death or some serious bodily injury;" and said second paragraph in applying the law, also restricts appellant's right to act in an actual attack, in the following

language: "And not in defense of himself against unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury," citing Brady v. State, 65 S. W. Rep., 521; Crawford v. State, 70 S. W. Rep., 548; Alexander v. State, 70 S. W. Rep., 748; Jones v. State, 17 S. W. Rep., 602.

Appellant complains of the following charge, to wit:

"If from the evidence you believe the defendant killed James A. Jett, but further believe that at the time of so doing the deceased or others had made an attack on him which, from the manner and character of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack on defendant, and if the weapon used by him and the manner of its use was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant." Said charge was not authorized by the evidence in the case, there being no evidence that deceased had made "an attack" on appellant at the time appellant drew his weapon and fired; and same in effect told the jury if there was not an actual attack being made on appellant that he would not have the right to defend himself, and virtually instructed the jury that appellant had no right to act against an attack which was imminent (but not actual) and from his standpoint about to be made by the deceased and Rogers, judged by the actions of deceased when defendant came in sight of him at the instant of the homicide; and the following language of said charge, "and if the weapon used by him and the manner of its use," etc., again indicated to the jury that the deceased must have been actually using his weapon before any presumption could arise in favor of appellant, and, in effect, that no presumption did arise if the deceased was attempting to draw his weapon and was not actually "using it" in an attack, when defendant shot at deceased; and said charge taken as a whole is an incorrect definition of the law of self-defense as made by the facts of this case adduced upon the trial. Brady v. State, 65 S. W. Rep., 521; Crawford v. State, 70 S. W. Rep., 548; Alexander v. State, 70 S. W. Rep., 748; Jones v. State, 16 Texas Crim. App., 593.

*Howard Martin,* Assistant Attorney-General, for the State.   No brief for State found in the record.—Reporter.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty-five years; hence this appeal.

The theory of the State was, that appellant entertained a grudge

against deceased because deceased had killed his brother, Tom Poole, some months before the homicide; that the feud was renewed and intensified on account of the difficulty between defendant and the son of deceased on Saturday night before the homicide; that appellant, at the time of the homicide, took advantage of deceased and shot him from the side door of Baker's saloon, deceased at the time standing in the street and making no hostile demonstration against appellant.

Appellant's theory was that deceased had repeatedly threatened his life, and on the morning of the homicide cursed and abused him; that the acts and conduct of deceased during the day, and preceding the homicide, were calculated to and did create fear and apprehension on the part of appellant that he would be attacked by deceased; that on coming out of the saloon at the time of the homicide he saw deceased standing in front of the door some fifteen or twenty feet out in the street, and that deceased immediately made a demonstration as if to draw a pistol, when he shot and killed deceased, and that he was justified in doing so.

Appellant assigns as error the action of the court in overruling his motion for continuance. Among other witnesses appellant claims particularly that the court should have continued the case on account of the absence of Walter McLean, Walter Austin, Frank Sessions, C. K. Baxter and Bernie Looney, who had been summoned and were not present.

As to these witnesses we think the diligence was sufficient. We think the testimony of Walter McLean was material, inasmuch as the State's testimony tended strongly to show that appellant came out of the side door of Baker's saloon, and fired the fatal shot at deceased when deceased was unaware of his presence and making no demonstration against him. According to appellant's testimony he was coming out of the front door of Baker's saloon, when he saw deceased standing in front of said door, and that he immediately made a demonstration as if to draw a pistol, when he shot him. He also testified that McLean was with him at the time, and there is other testimony to the same effect. By McLean he proposed to prove, substantially, the same facts as testified by himself.

Unquestionably the testimony of this witness was upon the vital issue in the case, and was material to appellant's defense. The testimony of some of the other absent witnesses, according to appellant's statement, would also corroborate him as to what occurred in the difficulty or immediately before. The testimony of some of these witnesses is also material on behalf of appellant to show what Claude Poole and Grover Poole were doing shortly before the homicide, inasmuch as there is testimony in the record showing that they participated in the homicide, and there is some suggestion as to a conspiracy between them and appellant to bring on the difficulty, and this conspiracy was asserted by the State during the progress of the trial. In our opinion the case should have been continued on account of the absent witnesses, or a new trial should have been granted after the testimony was developed and conviction obtained.

Appellant also assigns as error the action of the court in the impanel-

ment of the jury.  The bill shows that four jurors, who had been summoned as special veniremen in the case, were excused by the court on his own motion, over the objection of the defendant, because said jurors stated on voir dire that they had not paid their poll tax for the year 1903 prior to the first day of February of said year.  Under the statutes and Constitution of this State the fact that a juror has not paid his poll tax goes to his qualification.  However, as we understand the statute, this is made a ground of challenge, and not an absolute disqualification of the juror.  Art. 676, Code Crim. Proc., says, that no one who is subject to the third, fourth or fifth clauses of challenge, under article 673, shall be impaneled as a juror.  The poll tax requirement is subdivision 1 of said article, and so is not included in either of said subdivisions which absolutely disqualify the juror.  And this article, as amended by the last Legislature, which passed an act with reference to juries under the amendment of article 6, section 2 of the Constitution, adopted by the people in 1901, leaves the subject of challenging a juror on the ground that he was not a legal voter exactly as it was before.  See amendment to the Const., Gen. Laws `27th Leg., p. 322; and amendment relating to qualification of jurors, Acts Spec. Sess. 27th Leg., 1903, p. 15.

There was no error in the action of the court refusing to require the district attorney to make a statement prior to the introduction of evidence as to what the State would undertake to prove.  Art. 697, Code Crim. Proc.; Holsey v. State, 24 Texas Crim. App., 35.

Nor did the court err in retiring the jury when appellant's attorney was making a rebutting statement in reply to a statement of the district attorney who had previously stated, in regard to the admission of certain testimony, as to what Grover Poole said or did during the difficulty, that he expected to show a conspiracy existed on the day of the homicide between defendant and Grover and Claude Poole to kill deceased.  Of course, both statements should have been presented to the court, and the jury might well have been present at the statement of defendant's counsel as well as when the statement of the district attorney was made.  However, it may not have occurred to the court that there was any cause to retire the jury, until the question had been raised and presented by counsel for the State.  At any rate, we fail to see any prejudice resulted to appellant from the action of the court in this regard.

We do not believe that it was competent to introduce before the jury what Grover Poole may have done and said on Saturday night preceding the homicide, during the difficulty with Stanley Jett, son of deceased, so far as anything said or done by said Grover was said and done in the absence of appellant.  If, however, Grover Poole made any threat of further or future violence towards deceased, which was agreed to or participated in by appellant, the same was admissible in evidence.

In our opinion it was entirely competent for defendant to state the purpose of offering certain evidence as to the details of the killing of

Tom Poole by deceased. The court might, in his discretion, have retired the jury while such statement was being made. Appellant complains in this connection because the court refused to permit him to introduce the details of the killing of Tom Poole by deceased Jett. He contends that this evidence was admissible in order to determine the state of mind of appellant as to deceased Jett. While the killing of Tom Poole (a brother of appellant) by deceased Jett was undoubtedly the origin of the feud which resulted in the homicide for which appellant was here being tried, yet it does not occur to us that the details of said difficulty were admissible in favor of appellant. The general rule is that the details of a former difficulty, even between the same parties, is inadmissible, and much more so where the difficulty is between other parties. Heffington v. State, 41 Texas Crim. Rep., 315, and authorities there cited. Here the former difficulty and homicide was not between the same parties, and we see nothing in that difficulty or the peculiar circumstances under which it occurred that would shed light on this homicide. Accordingly we hold that the court did not err in excluding this evidence.

It is complained by appellant, in his tenth bill of exceptions, that the court committed error in refusing him the privilege of showing certain evidence of a negative character; that is, he states the court permitted the State to prove by R. M. Johnson that he was within a few feet of deceased when the shooting commenced; that the first thing that attracted his attention was a shot from Baker's saloon, and that at that time deceased was standing twelve or fifteen feet out in front of said saloon, and that Jett had not fired up to the time he looked at him and after hearing the first shot. Defendant then proposed to show that, standing as he was, and not being particularly attracted to Jett until after said first shot, Jett might have made some demonstration and he not have seen it. The court refused to permit this testimony on the ground that it was of a negative character. We believe that it was competent for appellant to have proven the facts alleged by said witness. Appellant claimed, as a part of his defense, and proved by witness, that Jett did make some demonstration before he fired the first shot. The effect of Johnson's testimony certainly tended to show that Jett was doing nothing. On cross-examination it was permissible to prove by said witness that he was not looking at Jett prior to the first shot, and that he did not see whether he made any demonstration or not, and this could be elicited in the manner here proposed. The court is criticized in this and several other bills in regard to his actions and statements, when counsel for appellant made objections to testimony. Here the bill shows that the court interposed and stated to counsel, as follows: "I wish to state right here that whether State's counsel objects to this question or not, the court is not going to permit any question of that kind, which can only bring out negative testimony. It impresses me that it is nothing but a consumption of time, and I will stop you every time I think you ask a question that is not proper, whether State's counsel objects or not, and will give you

your bill of exceptions every time I stop you." Ordinarily the duties of a judge will be best conserved by merely ruling on the admissibility of testimony; and, if necessary, stating his reasons therefor. Sometimes it may be permissible to admonish against asking questions that are obviously illegal and objectionable, but we have seen nothing here authorizing the court to interpose as was done. We further believe that the court should be careful in admonishing counsel, either for the State or defendant, lest in so doing the influence of counsel may be improperly weakened or disparaged with the jury.

Appellant proved by the witness Ben Soileau that he met defendant at Frank Brown's saloon, about 2 o'clock on the day of the homicide, the homicide occurring an hour or two thereafter; that appellant and Dave Craft and witness were talking and drinking; that he told appellant he had heard Jett threaten him that morning; that directly afterward they started down the street, and he asked appellant if he was not coming too. And in this connection appellant proposed to prove that he stated to the witness Soileau at the time that he did not want to get cooped up in one of those saloons by Jett and his crowd. The State objected to this latter portion of the testimony on the ground that it was self-serving, and the court sustained the objection. Appellant claims that this testimony was admissible in order to show the condition of the defendant's mind, and that he was desirous of avoiding a difficulty, and that he apprehended danger from deceased and his crowd should they get him in some place where they could coop him up or get the advantage of him. While this was a declaration of defendant, it was anterior to the difficulty, and was a fact tending to show his then condition of mind and his apprehension of the difficulty with deceased. We believe that it should have gone to the jury for what it was worth, as tending to shed light on appellant's frame of mind as to deceased at the time of the difficulty and killing which occurred an hour or two thereafter.

What is here said is applicable to appellant's seventeenth bill of exceptions. That is, appellant could show that when he was advised by his brother George not to have a conflict with Jett, and defendant said to him he did not want to have any trouble with Jett and that he would not if he could avoid it, but that he might have, as Jett was drunk, and that he was afraid Jett would do him harm or attempt to kill him. While it is true this was a statement of appellant with reference to Jett, it was not made after the homicide but shortly before it. The declarations or conversations between defendant and third persons with reference to deceased would not, ordinarily, be admissible, yet it occurs to us that, under the circumstances of this case—it having been shown by a number of witnesses the condition of deceased, that he was drinking and cursing and abusing appellant during that day, and evidently pursuing him— we believe it was competent to show that appellant declared to others that he knew deceased was seeking a difficulty with him, and that it was his purpose to avoid the difficulty if he could. Of course, such testimony

might be manufactured, and be self-serving; but we are not passing here on the credibility of the witness but on the admissibility of the testimony as going to show appellant's condition of mind before and at the time of the difficulty. And it is no answer to this proposition to say that appellant could take the stand and testify himself. The jury might not believe him, whereas they might believe another witness who testified to acts and declarations of appellant before the homicide tending to show that he was desirous of avoiding any difficulty. At least, in our opinion, it should have gone to the jury for what it was worth, to be weighed by them. Simmons v. State, 31 Texas Crim. Rep., 227.

In this connection we would state that we do not believe it was permissible for appellant to show, as was attempted, that Claude Pool, in the conversation on that same day, told appellant not to have any violence with deceased, that he (deceased) would shoot him down like a dog. That was merely the opinion of an outsider, and was not admissible as testimony.

We believe it was competent for the appellant to have shown by witness McDaniel how it was that Jett, the deceased, came to make the threat to him against appellant on the evening of the day of the homicide, to wit: Said witness stated that deceased told him, about 2 o'clock on the evening and just before the homicide, that he was going to send every damn one of them home feet foremost before he left the street— meaning the Pooles. Appellant then proposd to show by said witness how deceased came to make such expression, to wit: That witness was then urging deceased to go home; that he was drunk and mad, and that after he slept over it he might not feel so violently inclined toward defendant and his family in general. Of course, as stated by the court, the threat was already proven; but it stood alone before the jury, and they might think it strange that deceased made a threat, without any statement in that connection to show how he came to make it, whereas the colloquy which called it forth showed it came about in a natural way, and so would serve to strengthen the testimony of the witness as to the main fact proven.

By appellant's twenty-fourth bill of exceptions it is shown that, while State's witness Johnson was on the stand, in connection with the introduction of some of his evidence as to the acts of Grover and Claude Poole with reference to the difficulty between defendant and Stanley Jett on the Saturday night preceding the difficulty, the district attorney stated to the court, in the presence of the jury, that the State's theory was that there was a conspiracy between defendant and Grover and Claude Poole on the day of the homicide to kill deceased. In rebuttal of this statement, appellant proposed to prove by said witness Johnson that he was present in court when the case against Claude and Grover Poole was called for trial (they being indicted for this homicide), and that he then heard the district attorney nolle pros all such cases, stating orally to the court that the State had no testimony showing any con-

nection of Grover and Claude Poole with the killing of Jett. This testimony was objected to and excluded. Appellant claimed that it was admissible to answer the State's intimations and statements as to a conspiracy between said parties. It does not occur to us that this testimony was competent or admissible. If the State had introduced evidence on this subject, then testimony in rebuttal thereof would have been admissible. In the absence of such testimony in response to the statements of the district attorney, objections should have been made to said statements, or a charge asked from the court to the jury expunging the same from consideration.

A number of exceptions were saved to the court's charge, many of which were to definitions which, in our opinion, were properly embodied in the charge. However, an objection was taken to the charge of the court because the effect thereof was to deprive appellant of the defense of apparent danger. While the court did instruct the jury that appellant had the same right to act in self-defense on apparent as well as on actual danger, yet when the judge came to applying the law to the facts, all the charges on self-defense are predicted on an "actual attack."

As we understand the evidence on the part of the appellant there was no actual attack by deceased on appellant at the time of the homicide, but there was preparation to attack. Appellant testified that he started out of the saloon at the front door. "I got to a screen on the right-hand side of the building, near the east side door; I saw Jett near the corner, about three or four steps from the outside of the sidewalk; he was walking toward the building; he threw his left hand to his scabbard, and with his right hand attempted to draw his gun. Up to that time I had made no demonstration to draw mine. My pistol was in my hip pocket, and I drew it and fired it at him to stop him from coming to me. I saw Rogers; he jerked his gun about the same time Jett did. I fired, and the last I saw of Jett he was walking backwards off the sidewalk. He had not got his pistol out when I fired. Within a second the next shot came. I did not hear anything except the shots. It was not a second after the first two shots that I heard the third one. I stepped behind the screen and ran out of the back door of the saloon. As I ran there were two more shots fired around the corner."

Under this phase of the case, as stated, there was a hostile demonstration, but up to the time appellant fired there was no actual attack on the part of deceased or Rogers. Under these circumstances, it occurs to us, the court should have distinctly told the jury that it was not necessary, in order that appellant assert his right of self-defense, that he await an actual attack. If deceased made a demonstration as if to draw a pistol, and appellant believed he was drawing a pistol for the purpose of making a deadly assault on him, he had a right to anticipate his movements and shoot in self-defense. Phipps v. State, 34 Texas Crim. Rep., 560; Brady v. State, 65 S. W. Rep., 521.

In the view we take of this case the court was not authorized to charge on an attack by deceased of a violent and dangerous character less than an assault with intent to kill or do serious bodily injury, as the facts do not warrant such a charge. Orman v. State, 22 Texas Crim. App., 604.

Appellant has a number of other assignments of error, which he discusses at some length in his brief; but we do not deem it necessary to pass upon the same. For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE.—I concur in the reversal of this case. However, I do not believe the statements made by appellant prior to the difficulty were admissible in evidence, inasmuch as they were self-serving.