## J. R. Bearden v. The State.

### No. 2936. Decided March 9, 1904.

**1.—Practice—Examining Trial Testimony—Remarks of Counsel.**

Where prosecuting attorney, in examining a witness, read from the testimony of another witness, taken in an examining trial, and defendant's counsel objected to that character of examination that it was an indirect way of getting the written testimony before the jury; whereupon State's counsel offered to introduce it and a colloquy ensued between counsel as to why the witness was absent and State's counsel displayed a telegram stating that he had sent for said witness and he refused to come, to which defendant's counsel objected, but the court overruled his objections and instructed the jury to disregard the remarks of State's counsel, there was no reversible error.

**2.—Argument of Counsel—Withdrawal of Evidence.**

It is doubted whether remarks of State's counsel, to the effect that he was present and witnessed the killing, not having testified, could be withdrawn from the jury by an oral and also a written charge of the court, although counsel was provoked in a measure to make such remarks.

**3.—Charge of the Court—Provoking Difficulty.**

Where the facts show that although the meeting of accused and the deceased was casual, but that defendant accosted deceased with refernce to a previous difficulty and repeated his demand to know why deceased had on that occasion used abusive language towards him, whereupon deceased repeated such language and defendant slapped him and then deceased attacked him with a knife, when defendant fired with a pistol which he had procured shortly before, it was competent for the court to have submitted the issue of provoking the difficulty on a casual meeting.

**4.—Same—Casual Meeting.**

In the absence of testimony raising the issue that defendant had sought the deceased, and in the light of the facts that the meeting of them was casual, it was error for the court to charge on that theory.

**5.—Same—Provoking Difficulty Defined.**

Where the court charges on the question of provoking the difficulty, it is reversible error not to charge the jury how a difficulty could be provoked; that is, that a party must do some act, or use some language reasonably calculated to provoke a difficulty with his adversary and with that intent. Following McCandless v. State, 42 Texas Crim. Rep., 58.

**6.—Same—Apparent Danger—Self-Defense.**

Where the facts show that the difficulty had actually begun, that appellant had slapped deceased, who thereupon attacked him with an open knife, when defendant shot him; the court need not have charged on the theory of reasonable apprehension of apparent danger. Distinguishing Phipps v. State, 34 Texas Crim. Rep., 560; Nix v. State, 7 Texas Ct. Rep., 922; Poole v. State, 76 S. W. Rep., 565; Aiken v. State, 64 S. W. Rep., 57.

**7.—Same—Relative Strength**

Where there is evidence of the relative strength of the parties and disposition of deceased, it is not error on the part of the court to charge the jury upon this phase of the case.

**8.—Same—Misleading.**

Where the evidence clearly shows that the first shot fired was accidental, it was error on part of the court to charge the jury that, if appellant was justified in firing the first shot, he had a right to continue firing, as such an instruction was calculated to mislead the jury as to appellant's right of self-defense.

Appeal from the District Court of Bell. Tried below before Hon. John M. Furman.

Appeal from a conviction of murder in the second degree; penalty, thirteen years imprisonment in the penitentiary.

The opinion sufficiently states the case.

*J. B. McMahon, Nelson & Little,* and *A. W. Gibson,* for appellant.— There is no evidence to show that defendant sought deceased for the purpose of bringing about a difficulty with him, and after meeting with the deceased, on the day of the homicide, there is no evidence that defendant used any language or did any act reasonably calculated to provoke a difficulty with deceased; and therefore the court erred in submitting that issue to the jury, and in thus limiting and abridging defendant's right of self-defense. Morgan v. State, 34 Texas Crim. Rep., 222; McCandless v. State, 42 Texas Crim. Rep., 58, 57 S. W. Rep., 672; Casner v. State (Texas), 57 S. W. Rep., 821; Casner v. State, 2 Texas Ct. Rep., 559; Pollard v. State, 7 Texas Ct. Rep., 548; Fant v. State (Texas), 57 S. W. Rep., 819; Dodd v. State, 5 Texas Ct. Rep., 363; Poer v. State (Texas), 67 S. W. Rep., 500.

The defendant and his witnesses make a clear case of self-defense. Hence the court erred in not giving a clear and unequivocal charge on that issue, applicable to the facts of the case, and untrammeled by any limitations or qualifications. The charge given by the court on self-defense qualifies and limits defendant's right of self-defense. Drake v. State, 8 Texas Ct. Rep., 645.

When the argument of the counsel representing the State is so obviously of a character that it is injurious in its nature and such a flagrant disregard of the rights of the defendant that it will be assumed a written charge requested and granted will not cure the error, such argument constitutes reversible error, althought the court charges the jury in his written charge to disregard the argument. Beson v. State, 43 Texas Texas Crim. Rep., 442; Jones v. State, 39 Texas Crim. Rep., 387; Schwen v. State, 37 Texas Crim. Rep., 368; People v. Ah Len (Cal.), 27 Am. St. Rep., 103.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of thirteen years.

It appears from the evidence that deceased and appellant were both renters on the same farm; that the fence around a certain pasture rented by deceased was out of repair, and some of appellant's stock got into the pasture. Deceased made complaint to the wife of appellant in regard to this, and subsequently came to fix said pasture fence. Ap-

pellant offered to assist him, but deceased declined his assistance, and as appellant started to leave drew his gun on him, and cursed and abused him. Appellant threatened him with a prosecution for this mistreatment, and subsequently started off to make complaint against deceased. There is some ,testimony tending to show that as he passed out by deceased the latter told him, if he would not prosecute him, he would take back "the son of a bitch." However, appellant went on and made the complaint. Several days after this the parties casually met in the little town of Rogers. As appellant came out of the saloon he met deceased in company with three others. According to the testimony of some of the witnesses, defendant said, "Howdy, Chinaman?" He denies this, stating he had a sort of stutter in his voice, and he said "Howdy, gentlemen?" At this juncture appellant began a conversation with one Herston, talking about the weather, crops, etc. He then turned to deceased, Newcomb, and asked him "why in the hell he had cursed and abused him as he did the other day." Deceased said, "Go away and let me alone; I thought that matter was settled. I don't want to have any trouble with you." · Appellant again asked deceased why he had treated him so, and a few days before cursed him and called him a son of a bitch. Deceased said, "Because you are a son of a bitch," but some of the witnesses did not hear his reply, though appellant, and perhaps one other witness, testified he replied, "Because you are a son of a bitch, and I will cut your damn throat," and he at once put his right hand in his pocket as if to get his knife, or some other weapon. It appears that at this time the parties were on the gallery of the saloon, which was two or three feet above the ground. When deceased made this remark, appellant knocked or slapped him off the gallery, with his hand or fist. Deceased caught on his feet and one hand. . Several of the witnesses concur as to the demonstration of deceased on the gallery as if to get a knife out of his pocket just before he was knocked off the gallery. One State's witness testified that he saw him open the knife just as he recovered himself, after being knocked from the gallery; and the witnesses generally concur in stating that deceased immediately ran up the steps and on to the gallery with the knife open in his hand. Nearly all of the witnesses say he was going toward defendant, who was standing on the gallery. That in the meantime, as soon as deceased started up the steps with his knife, appellant drew his pistol, and that the pistol was discharged before deceased got up on the gallery, into the floor of the gallery. Appellant says that this was an accidental shot; that the pistol was a double-action. Appellant then fired the second shot, which struck deceased in the back. Appellant explains this by stating that he shot just as deceased turned from him. Deceased then ran into the saloon, and appellant pursued him in there, firing two or three shots. It is not in evidence that deceased had any other weapon than his pocketknife. And it is in evidence that appellant, when he started to

town on that morning, came by his father-in-law's and secured his pistol. This is a sufficient statement of the case in order to discuss the bills of exception.

By appellant's first bill of exceptions it is made to appear that during the cross-examination of Mrs. Maggie Bearden, wife of appellant, by Matthews, one of the attorneys for the State, he read from the testimony of Will Joiner, taken at the examining trial of defendant. This was objected to on the ground that it was an indirect way of getting before the jury the examining trial evidence of Joiner. The State's counsel replied that he would offer the examining trial testimony in evidence. We fail to see how this conduct was calculated to prejudice the defendant. The testimony was not actually offered in evidence; and we are not informed of its character. It was further objected, while defendant was being cross-examined, the attorney representing the State held the testimony of Joiner in his hand, apparently reading therefrom. Counsel objected to this, because the testimony was irrelevant and immaterial, and that the testimony of Joiner was the best evidence, and the method pursued was an attempt to get before the jury the examining trial testimony of Joiner. And in this connection defendant's counsel stated he had tried to get Joiner here to testify. Mr. Matthews, in reply, stated that the examining trial evidence of Joiner was not ex parte; that he was cross-examined by the defendant's attorney; that the State had also tried to get Joiner; and then, holding up a telegram, said, "Here's an answer to a telegram we have just sent to Joiner, and he refuses to come;" and then said he was willing to put Joiner's examining trial testimony in evidence, if defendant's attorneys would agree to the same. Whereupon defendant's counsel replied they were not making any trade; that they wanted to try the case according to law. And then objected to the remarks of said attorney in the presence and hearing of the jury, because the same were wrong and calculated to injure defendant; and the court overruled the objections of defendant, except that the court instructed the jury to disregard the remarks of Matthews, State's counsel. While it is true that the proposition of State's counsel to use the examining trial testimony of Joiner, and in displaying the telegram and stating its contents, was not authorized by law, yet we are not prepared to say that he was not provoked thereto, by the course of appellant's counsel in stating that appellant had been trying to get Joiner, before the court as a witness. However, State's counsel went farther than was warranted by the provocation. The court instructed the jury to disregard the remarks, and under the circumstances we are not disposed to treat this as reversible error.

While Mr. Puckett, one of the attorneys for the State, was addressing the jury, he said: "Gentlemen of the Jury: Mr. Nelson said I was 'a scene lawyer.' Yes, I am a scene lawyer. I was present and witnessed the killing, and I would have testified in this case, if I were not an

attorney in the case; and having witnessed the killing, I know the State's theory is true." This was objected to on the part of appellant on the ground that the same was outside the record, and was calculated to injure the rights of appellant. Thereupon the court orally instructed the jury to disregard said remarks and also instructed the jury in a written charge to disregard the same. The bill also shows that Walter Nelson, one of counsel for defendant, in discussing the case to the jury, alluded to Puckett as a "scene-lawyer." So here it appears that one of the attorneys for the State was provoked in a measure to respond as he did. However, he went farther than he was warranted in going, and this brought before the jury in a very graphic manner that he knew the facts, having witnessed them, and that the State's theory was true. We are inclined to doubt whether this character of statement, coming from an attorney for the State, who claimed to have witnessed the homicide, could be withdrawn by the court so as to relieve it of prejudice to appellant. Rutherford v. State, 67 S. W. Rep., 100.

The appellant questions the charge of the court on provoking the difficulty, as he insists, because there was no testimony tending to show that he did provoke the difficulty. The court, after instructing the jury in regard to appellant's right to demand an apology from deceased for his previous mistreatment of him, and in case he apprehended danger from deceased to arm himself for his own protection, and that he approached him for the purpose of demanding an explanation, and thereupon deceased reiterated said insults and made an attack on defendant, which caused him to apprehend danger to his life, or serious bodily injury to his person, that he had the right to kill deceased in his self-defense. The court then follows this up with this charge: "But in this connection you are further charged that, if you find there had been a previous difficulty between defendant and deceased in which deceased had applied opprobrious epithets to and drew a gun on defendant, and that in consequence thereof defendant sought the meeting with deceased at the time of the killing, and if you believe beyond a reasonable doubt that defendant sought such meeting with W. P. Newcomb for the purpose of provoking a difficulty with said Newcomb, and did provoke the same with the intent to take the life of said Newcomb, or to do him such serious bodily injury as might probably end in the death of said Newcomb, then if you so believe beyond a reasonable doubt, you are instructed * * * the defendant would not be permitted to justify on the ground of self-defense, even though he might thereafter have been compelled to act in his own self-defense; but if he had no such purpose and intent in seeking to meet W. P. Newcomb, then his right of self-defense would not be forfeited," etc. We have examined the record carefully in order to determine whether or not the court was justified in giving a charge on provoking the difficulty. There is no evidence tending to show that appellant sought the meeting. However, there is some testimony tend-

ing to show that after he met deceased, against whom he had a grudge on account of his previous abuse of him, he accosted him; according to some of the witnesses, saying "Howdy, Chinaman?" which the witnesses took to refer to deceased. After speaking a few words with Herston, he again accosted deceased, demanding to know of him why he had mistreated him a few days before. The deceased replied that he thought that was settled, and to go on about his business; but appellant repeated the question, demanding to know why he had called him a son of a bitch. At this deceased replied, "Because you are a son of a bitch;" and then, according to some of the witnesses, including defendant, deceased made a demonstration as if to attack appellant with a knife or some weapon, but before he had actually assaulted appellant, the latter knocked or slapped him off the gallery. Under the circumstances, we believe it was competent for the court to have submitted the issue of provoking the difficulty on a casual meeting. But in this connection it is insisted that the portion of the charge which submitted to the jury the proposition that appellant "sought deceased" is erroneous because it was an assumption on the part of the court that there was testimony tending to show this. As stated above, there was none. The court should not have given that phase which was not in evidence. Moreover, the charge as given was not a correct charge on provocation. It will be noted that the court nowhere suggests in the charge how a difficulty could be provoked. He merely told the jury if appellant provoked the difficulty he could not set up self-defense. It has been held in a great number of cases that, in order to provoke a difficulty, a party must do some act or use some language reasonably calculated to provoke a difficulty with his adversary, and with that intent. While it is not necessary in a charge to collate the facts or circumstances which evidence the provocation (Morgan v. State, 34 Texas Crim. Rep., 222; Alexander v. State, 40 Texas Crim. Rep., 395), still the charge must furnish the jury some measure of what it takes in order to provoke a difficulty, which must be given in general terms. McCandless v. State, 42 Texas Crim. Rep., 58. In that case, without attempting to formulate a proper charge on the subject, we laid down the essential elements which should be embodied in a charge on provoking a difficulty. If the court had elsewhere in the charge instructed the jury in effect that, in order to provoke a difficulty, appellant must have done some act, or used some language with intent to provoke a difficulty, and which under the circumstances was reasonably calculated to do so, and had then used the expression as given in the charge, "if they believe defendant provoked the difficulty," there might be no cause of complaint. But here the court gave no standard as to what it took to constitute provoking the difficulty in any previous charge, and in this charge merely told the jury "if appellant provoked the difficulty" he could not set up self-defense. The jury may not have understood what was meant by this.

Appellant also complains of the court's charge on self-defense on the

ground, as he contends, that the court's charge is on actual danger. caused by an actual attack. The court instructed the jury that if deceased at the time of the homicide had made an attack on defendant, etc. The contention is that the evidence did not show an actual attack by deceased on appellant, but that he was about to attack. In support of this contention we are referred to Phipps' case, 34 Texas Crim. Rep., 560. We believe the facts of that case were different from those here manifested. In that case there was no pretense of actual attack. The deceased had been previously cursing and abusing Phipps, and had been taken out of the store once or twice during the evening. He returned and stepped up in the doorway of the store, and Phipps told him to get out. He threw his right hand toward his hip pocket, and at this juncture appellant fired. Other witnesses do not make the testimony this strong; but merely state that he stepped up in the doorway, and appellant Phipps shot him. Here the difficulty had already begun. Appellant had knocked deceased off the gallery because of an alleged demonstration. Deceased immediately with his drawn knife rushed up the steps on to the gallery, right at defendant, who then shot him. It occurs to us that the facts of this case distinguish it from those cases which require the judge to charge not only on attack but on rea-- sonable apprehension produced by an attitude as if about to attack. Aiken v. State, 64 S. W. Rep., 57; Poole v. State, 76 S. W. Rep., 565; Nix v. State, 7 Texas Ct. Rep., 922. The charge here given appears to be applicable to the facts proven.

Appellant also contends that the court erred in charging on the relative strength, etc., of the parties and disposition of deceased. We believe the testimony here authorized such a charge. The cases cited by appellant only indicate that where there is no testimony as to disparity in strength and dangerous disposition of deceased within the knowledge of defendant, such a charge is error. Here appellant made proof of the facts and brought home to himself knowledge of the strength of deceased and his dangerous character. In such case it is not error for the court to give a charge predicated on such facts.

It is also objected that the court in his charge on self-defense erroneously instructed the jury, if appellant was justified in firing the first shot he had a right to continue firing, etc., the contention being that the testimony of appellant clearly shows that the first shot was an accident, and that the second was the first intentional shot by appellant, and that the charge given was calculated to mislead the jury as to appellant's right of self-defense. We believe appellant's contention is correct in this respect.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*