Don F. Gray v. Mrs. Emma Phillips et al.

Decided February 24, 1909.

**1.—Self-Defense—Provoking Difficulty.**

The extent and limits of the right of self-defense by one who has himself provoked the assault discussed and authorities thereon reviewed. Charges on the subject considered and approved.

**2.—Same—Injuries Resulting in Death.**

In an action by the widow and children of deceased for damages caused by defendant shooting and killing him, defendant could not justify on the ground of self-defense where it appeared, that, being informed of improper advances made by deceased to his wife, he armed himself, sought out deceased with the avowed purpose of "calling" him, engaged in an altercation using violently abusive language, and shot deceased when, under such provocation, the latter attacked him with a knife.

**3.—Same.**

Where it appeared that defendant had unlawfully provoked and brought on an assault on himself by deceased and killed him in resistance thereto, a civil action lay against him in favor of the widow and children of deceased for the wrongful killing, though the difficulty was not provoked with such intention, and irrespective of the degree of guilt attached to the homicide by the penal law.

**4.—Same—Demand for Autopsy.**

The evidence showing that the defendant killed the husband and father of plaintiffs in an unlawful altercation which he had himself provoked, there was no error in refusing his demand for the appointment by the court of a commission of physicians to ascertain by autopsy certain facts going to prove whether deceased was shot from in front or from behind, the tendency of such evidence being only to determine the degree of defendant's guilt under the penal laws, and not to show that his act was a lawful one. Gray v. State, 55 Texas Crim. Rep., 90, involving the same facts and demand in a criminal prosecution, distinguished.

**5.—Evidence—Demand for Autopsy.**

The demand of defendant for an autopsy on the body of deceased whom he was charged with unlawfully killing, it having been refused, was not competent to be read in evidence in his favor before the jury.

**6.—Jury.**

Where, in a case not reached while the regular jurors selected for the term by jury commissioners were in attendance, defendant demanded a jury, it was proper practice for the court to set a day for trial, and have the sheriff summon other jurors for that day.

**7.—Deposition—Returning into Court.**

Where a deposition was quashed on motion for irregularities in the required indorsements on the envelope by the officer taking them, no error appeared, where there was no appearance of alteration, in having it returned to

the officer taking it and remailed by him to the clerk with the proper indorsements.

### 8.—Evidence—Earnings of Deceased.

Witnesses personally familiar with deceased and the returns he was receiving for his labor may testify to such earnings in an action for injuries resulting from causing his death.

### 9.—Opinion—Expert—Gunshot Wounds.

Opinion of a physician as to whether a bullet would have passed through or remained in the body of deceased held properly excluded because, (1) the inference sought to be drawn from the answer desired would establish no defense for the party offering the testimony; (2) the opinion of the witness on the question asked was not competent under the facts in evidence.

### 10.—Charge—Self-Defense—Apparent Attack.

An instruction submitting the issue of self-defense against attack was not erroneous in failing to submit the issue as to an apparent attack because, (1) it allowed defense as to any attack; (2) the evidence presented no issue as to apparent but not actual attack; (3) if there was an omission, a charge to supply it should have been requested.

### 11.—Charge—Death—Damages—Expected Benefits.

An instruction allowing recovery of damages by minor children for loss of the nurture, care and education they would have received from a father "had he lived," was not objectionable because not limited to such benefits as they would have received had he not been "killed by defendant, taking into consideration the uncertainties of life."

Appeal from the District Court of Burnet County. Tried below before Hon. Clarence Martin.

*Ike D. White, T. E. Hammond, Flack & Dalrymple* and *McLean & Spears,* for appellant.—Where the interest of justice demands it the court can, and should, require the exhuming and examination of a dead body. 3 Wharton & Stille's Med. Jurisprudence (5th ed.), p. 539, sec. 527; 3 Wigmore on Evidence, secs. 2194, 2219, 2220 and notes; G. L. Ins. Co. v. Brown, 57 Miss., 308, 34 Am. Rep., 446. Judicial expression of this State recognizes this power and duty in the courts. Fears v. Nacogdoches Co., 71 Texas, 339; Rutherford v. Harris, Ct. App., sec. 114.

On motion to quash venire: Texas & N. O. Ry. Co. v. Pullen, 33 Texas Civ. App., 143; Elkins v. State, 1 Texas Crim. App., 539; Shackelford v. State, 2 Texas Crim. App., 386; Gulf, C. & S. F. Ry. Co. v. Greenlee, 70 Texas, 560; White v. State, 45 Texas Crim. Rep., 597; Bickham v. State, 51 Texas Crim. Rep., 150.

The safeguards thrown around the taking of depositions by the statutes of this State not having been observed in the first instance, the error was not cured, but was aggravated and intensified by the further handling of said depositions without the statutory safeguards, in complying with the form, but ignoring the spirit of the law, and said depositions, not having been affirmatively shown to be in the same condition as when originally taken by the officer, should have been quashed and stricken out. Art. 2284, Revised Statutes of Texas, as amended by chapter 91, Acts Thirtieth Legislature, page 186; Creager v. Douglas, 77 Texas, 486; Galveston, H. & S. A. Ry. Co. v. Matula, 79 Texas,

579, 580; Barber v. Geer, 94 Texas, 581; Milliken v. Smoot, 71 Texas, 760.

The testimony complained of being upon the subject of the earning capacity of the deceased, a vital issue in the case, and not a subject of expert or opinion evidence, it was the province of the jury to draw their conclusion from the facts detailed, and it was error, prejudicial to defendant, to permit said witnesses to state their conclusions and estimates of the annual amounts earned by deceased.  Radam v. Microbe Destroyer Co., 81 Texas, 131; Kennedy v. Upshaw, 66 Texas, 453; Shelly v. Austin, 74 Texas, 612.

On rejecting proof that defendant had moved for an autopsy: Kirby v. Tallmadge, 160 U. S., 379; Mutual Life Insurance Co. v. Tillman, 84 Texas, 35; Bailey v. Hicks, 16 Texas, 226.

The defendant's right to act in his own self-defense, and to take the life of the deceased, was not limited by the condition that deceased must have actually made an attack on him, but he had such right in case of a threatened attack, or what appeared to him at the time, viewed from his standpoint, to be a threatened attack by the deceased.  Poole v. State, 45 Texas Crim. Rep., 348; Phipps v. State, 34 Texas Crim. Rep., 564-5; Brady v. State, 43 Texas Crim. Rep., 76.

The defendant had the right to call deceased out and demand an explanation.  King v. State, 51 Texas Crim. Rep., 208; Airhart v. State, 40 Texas Crim. Rep., 472; Holliburton v. State, 32 Texas Crim. Rep., 56.  The fact that a person arms himself before going to ask an explanation of insult, and insult is repeated, and defendant replies in language equally insulting, does not deprive him of right of self defense.  Shannon v. State, 35 Texas Crim. Rep., 2.  To hold otherwise would be to deny a man the right to notice any insult.  White v. State, 23 Texas Crim. App., 164; Mitchell v. State, 50 Texas Crim. Rep., 180.

*Slator & Oatman,* for appellees.—On directing the summoning of jurors by sheriff: Rev. Stats., art. 3150; Smith v. Bates, 28 S. W., 64; Western U. Tel. Co. v. Everheart, 10 Texas Civ. App., 468; Houston, E. & W. T. Ry. Co. v. Vinson, 38 S. W., 540; Texas & P. Ry. Co. v. Fambrough, 55 S. W., 189; Texas Midland R. R. Co. v. Crowder, 64 S. W., 92; Lucas v. Johnson, 64 S. W., 823; Hayward Lumber Co. v. Cox, 104 S. W., 404.

Correcting return of deposition: Insurance Co. v. Hird, 4 Texas Civ. App., 82; Gulf, C. & S. F. R. R. Co. v. Lyman, 65 S. W., 69.

Testimony as to earning capacity of deceased: Tompkins v. Toland, 46 Texas, 590; International & G. N. R. R. Co. v. Kuehn, 2 Texas Civ. App., 215; L. E. & St. L. Ry. Co. v. Clarke, 152 U. S., 230; Arkansas Midland Ry. Co. v. Griffith, 39 S. W., 550; Abbott's Trial Evidence (2d ed.), p. 758, sec. 50.

That the evidence did not call for charge on threatened attack: Renfro v. State, 56 S. W., 1020; Bearden v. State, 79 S. W., 39, 40.

Upon charge on measure of damages: International & G. N. R. Co. v. McVey, 87 S. W., 328.

RICE, ASSOCIATE JUSTICE.—On the 12th day of January, 1907,

Don F. Gray, appellant, shot and killed Will Phillips in the village of Valley Springs, Llano County, and this action is brought by Mrs. Emma Phillips, surviving widow of Will Phillips, for herself and as next friend for her four minor children, joined by the father of Will Phillips, to recover damages for said killing, alleging the same to have been unlawfully, maliciously and wrongfully done. Appellant answered by a general demurrer, special exceptions and plea of self defense.

There was a jury trial and verdict and judgment in favor of Mrs. Phillips and the children, the father of deceased having disclaimed any interest therein, for the sum of $8,750, actual damages, which was prorated by the jury between the mother and the children in accordance with the charge of the court, from which this appeal is prosecuted.

Appellant seeks to justify said killing on the ground of self defense, and by his first assignment of error urges that the trial court erred in overruling his motion asking that a committee of three reputable physicians be appointed to exhume the body of deceased and make an autopsy thereon, for the purpose of ascertaining whether or not three bullets, which he claimed were fired by him into the body of deceased, and did not pass through, could be found in said remains.

It is shown by the evidence that about the third day of January next before the killing, deceased had been employed by the defendant to trap wolves for him, and in the pursuit of such occupation was staying at the house of defendant, and that during his absence from home, deceased made indecent proposals to the wife of defendant, of which he was promptly informed by her; that thereupon defendant armed himself with a pistol for the purpose of going to Valley Springs, where he expected to meet deceased, saying that he intended to "call" him about such insult. That on Saturday, the day of the killing, defendant, accompanied by his brother-in-law, Gordon Mayes, did go to Valley Springs, where he met the deceased at a store in said village, and requested him to come out, saying that he wanted to see him. Whereupon they both went out of the back or south door of the store a short distance away and stopped, defendant preceding deceased. There were a number of persons in and about the gallery of the east door and some at the north door, which was the front of the store, but none of them were in position to see what occurred between defendant and deceased. Defendant stated that as he stepped out of the back door and looked around, he saw deceased with his knife in his hand; that "We went to a fence, and that he, defendant, asked the deceased if he had not always been treated right at his house." Deceased replied, "Yes." Whereupon defendant said: "Were you ever *mistreated?*" Deceased said, "No." That defendant then said: "G—— d—— your heart, what did you do Nora (meaning defendant's wife) like you did for?" Whereupon deceased said: "Don, I don't blame you for being mad, but I am not going to take any abuse off you." Then defendant said: "You G—— d—— s—— b——, you have got to take it; I have got it to give, whether you take it or not." Deceased then turned and walked towards the back door of the store tolerably fast, defendant following him. When he reached within three or four feet of the back

door, deceased turned around and said to defendant: "G—— d——
you, shut up!" when defendant said: "You G—— d—— bastardly
s—— b——, you will have to make me." Deceased, saying that he
could do it, turned on defendant with his knife drawn, whereupon de-
fendant grabbed his gun and shot him. He was then facing defend-
ant, some six or ten feet away; that defendant fired three shots as fast
as he could. At the first shot deceased turned and ran for the door,
and when he went out of sight defendant stopped shooting.

The above recital of facts is taken from brief of appellant, and is
his own statement of the occurrence. It was shown from the evi-
dence that while none of the parties at the store saw the first shot,
still, after hearing the first shot, it appears that upon looking up, two,
at least, of the persons near the east door saw the deceased coming
into the store in a bent posture, dragging his right leg behind him,
with defendant following with a pistol in his hand. Those who
dressed and examined the body of the deceased after the shooting say
that they found four wounds upon his person: one just below the right
shoulder blade, one back of the right hip, one in the left breast and
one just above the right ear; that the one in the back of the shoulder
and the hip appeared to be about the same size—smooth, round holes,
with the flesh pressed in; that the one in the left breast was about five
inches higher on the body than the one in the back, and this one pre-
sented a larger and rougher and more ragged appearance than did the
one in the back, with the flesh pressed outward. While there was some
testimony from defendant's witnesses that there was very little differ-
ence in the appearance of the wounds in the back and those in the
front, still it appears that they made no special examination of these
wounds.

From this testimony it was contended on the part of plaintiffs that
the defendant shot the deceased three times with a pistol, one of the
balls entering the back near his shoulder blade and coming out
through the breast, while the other entered the back part of the hip
but did not come out, and that the wound above the right ear was
from one of the shots, thus accounting for all of said shots. While,
on the other hand, the defendant testified and contended that the first
shot was fired while the deceased was facing him and went into the
breast and did not come out, and that the other two bullet holes were
made by shots while the deceased was going from him, and that neither
of said three balls came out, thus accounting for the three shots, and
that the wound on the side of the head above the ear was not a gun-
shot wound, but was likely made in falling against some object inside
of the store, probably a nail keg nearby.

Defendant's motion asking for an autopsy set up these facts and was
based upon them, alleging that they supported his theory of self de-
fense, and that the autopsy would disclose three balls in the body of
deceased, and in addition thereto, stated that there was no other source
from which said testimony could be procured, and proffered to pay
and deposit in court whatever sum the court might determine to be
necessary to defray the expenses of said autopsy. This motion was re-
sisted by the plaintiffs and was overruled, and upon which ruling de-
fendant predicates error.

In order to sustain this prosecution it is only necessary to show an unlawful killing of the deceased by the defendant. It is immaterial as to what the grade of the offense would be in a civil prosecution, such as this, so that if the evidence in this case failed to show that the killing was in self defense, and also failed to show that it was murder, still, if from the evidence it appeared that the offense was manslaughter, then the defendant could not justify said killing and the plaintiffs would have the right to recover.

In Reed v. State, 11 Texas Crim. App., 511, Judge White, in delivering the opinion of the court, quoting from Blackstone, says: " 'Self-defense, therefore, as it is justly called the primary law of nature, so it is not, neither can it be in fact, taken away by the law of society. In the English law, particularly, it is held an excuse for breaches of the peace; nay, even for homicide, but care must be taken that resistance does not exceed the bounds of mere defense and prevention; for then the defender would become the aggressor.' But the right of self-defense," continues Judge White, "though inalienable, is and should to some extent be subordinated to the rules of law regulating its proper exercise, and so the law has wisely provided. It may be divided into two general classes, to wit: perfect and imperfect right of self-defense. A perfect right of self-defense can only obtain and avail where the party pleading it acted from necessity and was wholly free from wrong or blame in occasioning or producing the necessity which required his action. If, however, he was in the wrong—if he was himself violating, or in the act of violating the law—and on account of his own wrong was placed in a situation wherein it became necessary for him to defend himself against an attack made upon him which was superinduced or created by his own wrong, then the law justly limits his right of self-defense, and regulates it according to the magnitude of his own wrong. Such a state of case may be said to illustrate and determine what in law would be denominated the imperfect right of self-defense. Whenever a party by his own wrongful act produces a condition of things wherein it becomes necessary for his own safety that he should take life or do serious bodily harm, then indeed the law wisely imputes to him his own wrong and its consequences, to the extent that they may and should be considered in determining the grade of offense; which but for such acts would never have been occasioned." Mr. Bishop says: "The rule is commonly stated in the American cases thus: If the individual assaulted, *being himself without fault,* reasonably apprehends death or serious bodily harm to himself unless he kills the assailant, the killing is justifiable.' 1 Bish. Cr. L., 865. But a person can not avail himself of a necessity which he has knowingly and willfully brought upon himself. State v. Neely, 20 Iowa, 108; Adams v. People, 47 Ill., 376; State v. Starr, 38 Mo., 270. That is, it will not afford him a justification in law. See 2 Cooley's Black. book 4, chap. 14, p. 180. How far and to what extent he will be excused or excusable in law must depend upon the nature and character of the act he was committing and which produced the necessity that he should defend himself. When his own original act was in violation of law, then the law takes that fact into consideration in limiting his right of defense and resistance whilst in the perpetration of such unlawful act.

If he was engaged in the commission of a felony, and to prevent its commission the party seeing it, or about to be injured thereby, makes a violent assault upon him, calculated to produce death or serious bodily harm, and in resisting such attack he slay his assailant, the law would impute the original wrong to the homicide and make it murder. But if the original wrong was or would have been a misdemeanor, then the homicide growing out of or occasioned by it, though in self-defense from an assault made upon him, would be manslaughter under the law."

With reference to provoking a difficulty, our Code (see White's Ann. Penal Code, article 708), provides that a homicide may take place under circumstances showing no deliberation, yet if the person guilty thereof provokes a contest, with the apparent intention of killing or doing serious bodily injury to the deceased, the offense does not come within the definition of manslaughter.

There are numerous decisions of our own courts construing this statute, all of them holding that if a party provokes a contest, with the apparent intention of killing or doing serious bodily harm to his adversary, then in no event is he justified in such case in killing his adversary, even to save his own life; and if he kills his adversary under such circumstances, he would be guilty, at least, of murder in the second degree. But if the slayer provoked the contest without any intention to kill or inflict serious bodily injury, and suddenly, without deliberation, did the act of killing, while the act would not be justifiable homicide, still it might be of a lower grade of homicide than murder. See in support of this doctrine, Green v. State, 12 Texas Crim. App., 445; Reed v. State, supra; King v. State, 13 Texas Crim. App., 277; Cartwright v. State, 14 Texas Crim. App., 486, and other cases cited in the note to said article in White's Penal Code.

In discussing this provision of the Code in Green v. State, supra, Judge Wilson says: "But suppose the contest was provoked without any apparent intention of killing or doing serious bodily injury, what then would be the legal effect of the provocation? Looking at the question as affected by this statutory provision we believe the true doctrine to be this: First. If the slayer provoked a contest with the deceased with the apparent intention of killing him or doing him some serious bodily injury, he is guilty of murder, although he may have done the act of killing suddenly, without deliberation, and in order to save his own life. The law allows no justification in such a case and no reduction of the grade of homicide. Second. But if the slayer provoked the contest without any intention to kill or inflict serious bodily injury, and suddenly, without deliberation, did the act of killing, while the act would not be justifiable homicide, still it might be reduced to a lower grade of homicide than murder."

The same doctrine is quoted with approval in King v. State, supra. In discussing this doctrine, especially with reference to the character of wrong that will abridge the right of self-defense, Judge Hurt, in Cartwright v. State, supra, says: "What character of wrong acts must produce the necessity to take life? Suppose the wrong acts were not calculated to produce the necessity, but did have this effect? Again, suppose the wrong acts were not intended to produce the necessity by

the wrongdoer? Would the party guilty of the wrong acts be guilty of culpable homicide who, to save his own life, takes the life of another under the supposed cases? Just here it is necessary for us to consider the nature and quality of the act, the doing of which will so far abridge one's right of self-defense that if he kill another, although to save himself from death or great bodily harm, he will yet be guilty of a felonious homicide in some of its degrees. It would be quite difficult to lay down a general rule by which all wrongful acts could be tested, and judged sufficient or not sufficient to deprive one of the complete right of self-defense. This we will not attempt, but at present will confine ourselves to the conclusions reached by an examination of quite a number of cases. From these cases we conclude that the doing of the following acts is held so far to abridge a man's right of defense that, if he therefore kill another, he can not be acquitted of all crime:

"1. Using provoking language or resorting to any other device in order to get another to commence an assault, so as to have a pretext for taking his life, or to have a pretext for inflicting on him bodily harm. (Stewart v. State, 1 Ohio St., 66; Adams v. The People, 47 Ill., 376.)

"2. Provoking another for the purpose of bringing him into a quarrel, so that an affray may be caused. (Selfridge's Case, H. & T. on Self-Defense, p. 24.) But in Selfridge's case, though this proposition is stated generally, it is most clearly stated that no words nor libelous publications, however aggravating, will deprive one of the right of self-defense, if in consequence of the same he is attacked.

"3. Agreeing with another to fight him with deadly weapons. (State v. Hill, 4 Dev. & Batt., 491.)

"5. Going to the place where another is with a deadly weapon for the purpose of provoking a difficulty, or with the intent of having an affray. (Neely's Case, 20 Iowa, 108; State v. Benham, 23 Iowa, 154, and other cases.)

"The doing of the acts contained in the former illustrations will deprive the party of the right of a complete or full defense. There is, however, another very important question presented in the fifth proposition. Suppose that a person should go armed to the place where another is, intending to provoke a difficulty, but says nor does anything to the other at all, or says nor does anything to the other tending to show his purpose was to provoke him to a difficulty. Will the intent with which he went, though nothing said or done by him was intended or calculated to provoke the other, deprive him of the right of self-defense? By consulting the cases we will find that there was some act or word, done or said, tending to provoke the other."

After discussing the Neely case and Benham case, above cited, continuing, Judge Hurt says: "That he who resorts to such means, or to any means to provoke a difficulty, with a view to take the life of his victim, is not only guilty of murder, but murder of the first degree. Can this be said of a person who merely goes to another with intent to provoke a quarrel? We think not, unless the ultimate object or intent is to take the life of the party, or commit a felonious assault in some of its grades. In Selfridge's case it was held that: 'No words

spoken or libelous publications, however aggravating, will compromit his complete right of defense.' This should be modified, for we have seen that if the words were spoken with the intent to provoke an assault for the purpose of having a pretext for taking his life, he would be guilty of murder. There is a vast difference between this proposition and that stated by Judge Dillon, to wit, 'to bring on a quarrel.' While we might cite one hundred cases bearing upon this subject, but little could be learned of value, so long as the principle which underlies the whole question is not correctly understood. What then, is the principle? In Broom's Legal Maxims, p. 255, it is said: 'A man may not take advantage of his own wrong to gain a favorable interpretation of the law. He seeks the law in vain who offends against it.' It is upon the plain principle, said Judge Wright in Neely's case, 'that one can not willingly and knowingly bring upon himself the very necessity which he sets up for his defense.' It would follow, therefore, that the conduct of the party must show that he knowingly and willingly used language, or did acts which might reasonably lead to an affray or a deadly conflict; and that something besides merely going to the place where a person slain is, with a deadly weapon, for the purpose of provoking a difficulty, or with the intent of having an affray, is required in order to constitute such wrongful act. But it is not necessary that the additional acts or words should be done or said at the time of the homicide (Neely's case). The former conduct of the defendant towards the party slain, with all of the attending circumstances occurring before, and in connection with the fact that he went to the person slain, and his language and bearing towards him at the time of the homicide, may and frequently do constitute that character of provocation which estops defendant from pleading the necessity which could otherwise be interposed."

Judge Hurt, in Franklin v. State, 30 Texas Crim. App., 640, says: "A party may have a perfect right of self-defense, though he may not be wholly free from blame in the transaction, the question being what is the nature of the blame? If the blame or wrong was not intended to produce the occasion, nor an act which was under the circumstances reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act may not be blameless. But if the act was a violation of the law and was reasonably calculated to produce the occasion, then the right of self-defense would be abridged." And in discussing the charge complained of in that case, said: "But the objection to the charge is that it is too general. The wrongful act is not named, and the jury might believe certain acts as wrongful which are not such in law. The defendant might have gone to the house without any intent to injure him, and yet his presence there might have been in one sense wrongful, but not illegal nor calculated to provoke the occasion. This being the case, his right of self-defense would not be abridged. The charge, it is true, restricts the wrong to a misdemeanor, but the acts constituting the misdemeanor are not disclosed."

The same learned Judge on the second appeal of the Franklin case, reported in 34 Texas Crim. Rep., 286, after discussing and approving the doctrine enunciated in Reed's case, supra, uses this language:

"Again, and as we have already said, one may be guilty of a wrongful act which produces the necessity to kill and be guilty of no offense, though he take life. If the act, though wrongful, be not illegal and be not intended to provoke a difficulty, nor reasonably calculated to produce the occasion and the necessity for taking human life, and the party kill to save himself, he is justified."

The later cases from the same court have not varied or altered this rule, so far as we understand it, but, on the contrary, have expressly recognized the same.

In the case of Carter v. State, 37 Texas Crim. Rep., 403, which was reversed on account of the failure of the lower court to specifically apply the law of provoking a difficulty to the facts in hand, but where the general doctrine, as announced in the foregoing decisions was abstractly given in charge by the trial court, Judge Davidson delivering the opinion of the court, said: "Again, a party may be provoked into a difficulty, but the person giving the provocation does not lose his right of self-defense, unless he intends to provoke the difficulty with a view to entering into a fight with his adversary. The main question for the decision of the jury is the intention with which the provocation was given, and this should be stated in the charge. In every case involving the question of provoking the difficulty, if the defendant provoked the difficulty or produced the occasion for the purpose of inducing his adversary to make the attack, so that he could kill him, why this is murder. If there is no felonious intent, the party intending an assault and battery, and he is forced to kill to save his life, this is manslaughter; but unless there is an intention to have a difficulty, his right of self-defense remains complete. Some acts may be committed of such a character as to carry the intention with them. This, however, is a matter for the jury. The court, however, should in all cases submit the intention with which the provocation is given."

In Vann v. State, 45 Texas Crim. Rep., 434, it is held "That the court, in charging on the law of provoking a difficulty, should have instructed the jury that defendant must have said or done something which produced the occasion, or brought about and provoked the difficulty, before his right of self-defense will be abridged."

And in Garza v. State, 48 Texas Crim. Rep., 382, it is held that "to render one guilty of provoking a difficulty, he must be shown to have used some language or done some act with that intent."

In the recent able and elaborate opinion of Judge Ramsey in Young v. State, 53 Texas Crim. Rep., 416, where many of the authorities upon this subject are reviewed, it is said: "It is undoubtedly the law of this State that if one provokes a difficulty in order to have a pretext to kill an adversary, or inflict upon him serious bodily injury, he can not justify such killing on the ground of self-defense, although it may subsequently be necessary for him to kill his adversary to save his own life. It is the law, too, that if one provokes a difficulty intentionally, in order to have a pretext to inflict some unlawful injury upon him, but not for the purpose of killing him or inflicting upon him serious bodily injury, he can not thereafter justify such killing on the ground of self-defense, but that offense will not be murder, but will ordinarily be manslaughter. Where, however, with no intention of provoking a

difficulty to kill or do other unlawful violence, but it is found that the acts and conduct of an appellant, though not intended by him so to do, had the effect of inducing his adversary to assault him, it can not be held that he thereby loses his right of self-defense, or that such right is in any sense impaired."

Now applying the law as set forth in the foregoing decisions to the facts of this case, let us see whether or not the words, conduct and acts of appellant, before and at the time of the difficulty, were such as show on his part an intention to provoke a difficulty with deceased, and were reasonably calculated to effect that object, and thereby so abridge his right of self-defense as to make the act of killing, under the circumstances, unlawful. The testimony shows that appellant's wife had been insulted by the deceased, and that the appellant, having been informed of the insult, armed himself with a view of meeting and "calling" the deceased about it, knowing that it would likely bring about a difficulty, because his wife had told him that the deceased had asked her not to tell him about his conduct, because it would cause trouble. He and deceased had known each other intimately for years, and it is reasonable to suppose that he knew what effect abusing the deceased under such circumstances would have, this being one of the purposes for which it is shown he sought the meeting. Under the law he clearly had the right to demand an explanation of the deceased of such conduct towards his wife, and if he apprehended, as the evidence showed that he likely did, that out of this interview there might arise trouble, he had the right to arm himself for the purpose of protecting himself from any unlawful assault that he contemplated deceased might make upon himself. But this right to arm himself did not extend to any other purpose than the right to protect himself from any unlawful violence that might be offered to him by deceased, and did not give him the right to become the aggressor. (Shannon v. State, 35 Texas Crim. App., 2.) Now the evidence of the defendant himself shows without question that he sought the deceased, as he says, for the purpose of "calling deceased out and abusing him." While he had the right to demand an explanation or an apology, he had no legal right to abuse the deceased, and thereby bring on a difficulty. The evidence shows, without going into detail, that the defendant cursed and abused the deceased, that the deceased immediately walked away from the defendant; that the defendant pursued him, still cursing and abusing him, using towards him the most vile and opprobrious epithets a man can use towards another, at which time, according to his own evidence, the deceased told him to "shut up," whereupon he replied: "You G—— d—— s—— b——, you will have to make me," at which deceased turned upon him with a knife, whereupon he began to shoot, and while the deceased was fleeing for his life he continued to shoot until the deceased had entered the store.

It is a misdemeanor under our law, punishable by fine, for any person to curse or abuse another, or use towards him any violently abusive language under circumstances reasonably calculated to provoke a breach of the peace. (Article 599, White's Penal Code.) Now, it seems to us that, while defendant had the right to demand an explanation or an apology from deceased, still this did not give him the right, in the

event of a refusal on the part of deceased to satisfactorily explain or apologize, to curse and abuse him in such manner and under such circumstances as would be reasonably calculated to produce a breach of the peace, because so to do was not only wrongful conduct on the part of the defendant, but was unlawful as well, and, together with his acts, words and conduct at the time, was reasonably calculated to irritate and exasperate the deceased into making an attack upon him, and was tantamount to an assault upon deceased, and could not, as we view it, be regarded by himself in any other light. And if the same was done for the purpose of causing deceased to attack him, thereby making it necessary to defend himself from such attack by deceased (and everyone must be presumed to intend the reasonable, natural and probable consequences of his acts), then it seems to us that it can not be said with reason that the defendant should not be held responsible for the occasion thus voluntarily brought on by himself. The law does not require that defendant should have declared that the purpose of his going to meet the deceased was to kill or do him serious bodily injury, or to assault him, before his right of self-defense could and should be abridged, but the test, we think, is: Do his words, conduct and acts at the time make it to reasonably appear that such was his purpose?

If we are correct in this, then it follows that, notwithstanding the fact that the first shot, as contended by appellant, was fired by him while the deceased was facing him with a knife in his hand, still, under the law, the killing under such circumstances would deprive him of the perfect right of self-defense, and render him, in our judgment, at least guilty of the offense of manslaughter. Hence it follows that if from his own testimony the defendant was not entitled to the perfect right of self-defense, then the testimony sought to be adduced by the autopsy upon the body of the deceased would be immaterial, even granting that it would show, as contended by appellant, three balls in the body of the deceased. But, if we are incorrect in the last holding, still we think the evidence is ample to show that all of the shots entering the body of deceased did so from behind, and none of them in front, and that the circumstances surrounding the transaction, as testified to by the witnesses, likewise support this theory. While it is true that no one, other than the defendant, undertakes to testify as to the attitude of the deceased at the very moment of the firing of the first shot, still, the firing was rapid, almost instantaneous, and the witnesses do state that immediately after the first shot the deceased was seen fleeing toward and climbing into the back door of the store, apparently wounded. From this evidence, and the appearance of the wounds themselves, we think the jury could fairly conclude that the deceased at the time of the difficulty was not facing the defendant, but, on the contrary, was fleeing from him, while the defendant was pursuing, abusing and shooting at him. And so believing, we hold that the court did not err in overruling his motion for an autopsy. And while we are aware that this ruling is in apparent conflict with the opinion of the Honorable Court of Criminal Appeals in this case (see Gray v. State of Texas, 55 Texas Crim. Rep., 90) so far as it applies to the refusal of the court to order the body exhumed, and for whose judg-

ment we entertain the utmost respect, still, we are constrained to believe that the facts of this case abundantly show, as held in the dissenting opinion of Judge Brooks, that the defendant provoked the difficulty with the deceased under such circumstances as to deprive him of the perfect right of self-defense, thereby rendering the killing of deceased unlawful, so that it then became immaterial to order the autopsy, even though it be conceded that it would disclose facts sustaining appellant's contention in this respect. But we concur with that Court in their holding that there may be many instances in which, in order to attain justice, an autopsy should be granted, and that the court should and ought to have, even in the absence of a statute authorizing it, the inherent power to order the exhuming of a dead body, when it has been made to appear that justice and right would be defeated in the event that such order was not made.

By his second assignment appellant urges that the court erred in refusing to quash the venire of 25 men summoned by the sheriff under the order of the court, from which to select the jury in this case, contending that he was entitled to select his jury from those drawn by the commissioners. At the instance of the defendant the venue of this case was changed from Llano to Burnet County, where the case was tried. It appears from the bill of exceptions that at a previous term of the court, and before this case had in fact been transferred from Llano to Burnet County, the court, in view of the business then upon its docket, ordered the jury commissioners to select a jury only for the first week of the succeeding term, which was done; that thereafter this cause was transferred to this court and was not reached in the first week, and no trial thereof during said week was demanded by the defendant. That on Wednesday of the second week, at which time no jury was in attendance upon the court which had been selected by the jury commissioners, the case was called for an announcement, whereupon the plaintiffs waived a jury trial and agreed to try the case before the court without a jury. The defendant objected to said waiver and demanded a trial by a jury selected by the jury commissioners. Whereupon the case was set by the court for Friday, January 17th, and the sheriff duly sworn and instructed to summon a venire of twenty-five men for that day, which he did, and from which the jury in this case was selected.

Article 3150 of the Revised Civil Statutes of Texas provides, among other things: "That if from any cause the jury commissioners should fail to select jurors as required, the court shall forthwith proceed to supply a sufficient number of jurors for the term under the provisions of this title." Article 3184 id. gives the court the authority to direct the sheriff to summon jurors when none have been selected by the jury commissioners. These articles have been construed by the courts and the rulings there made expressly sustain the action of the court below. See Smith v. Bates, 28 S. W., 64; Houston, E. & W. T. Ry. Co. v. Vinson, 38 S. W., 540; Western Union Tel. Co. v. Everheart, 10 Texas Civ. App., 468; Texas & P. Ry. Co. v. Fambrough, 55 S. W., 189; Texas Midland R. R. Co. v. Crowder, 25 Texas Civ. App., 536; Lucas v. Johnson, 64 S. W., 823; Hayward Lumber Co. v. Cox, 104 S. W., 404. So, we take it, the law was not violated by the ac-

tion of the court in this respect; but, on the contrary, the proper practice was pursued.

The court sustained the motion of the defendants to quash certain depositions taken at the instance of plaintiffs before John C. Oatman, a notary public of Llano County, because the envelope in which said depositions were transmitted did not have endorsed across the seal thereof the name of the officer purporting to have taken the same, and because said officer did not certify that he "in person" deposited the same in the mail for transmission, and because said officer did not endorse on the envelope enclosing the same the names of all the parties plaintiff, but only endorsed thereon the number and style of the cause, to wit: "No. 1865. Mrs. Emma Phillips et al. v. Don F. Gray;" and because said officer did not endorse on said envelope the names of all of said witnesses, but omitted therefrom the name of one of said witnesses. Whereupon the plaintiffs moved the court to permit them to withdraw said depositions and forward the same to said notary and permit him to correct and amend his return in the respects indicated, which motion was granted over the objection of defendant, and said depositions forwarded to said notary for the purposes indicated. The corrections and amendments were made and the depositions again returned by mail to the clerk of said court. Whereupon the defendant again filed his motion to quash said depositions: First, because the officer before whom the same were taken did not endorse on the envelope in which the same were enclosed the names of the parties to this suit; and second, because said depositions were not shown to be in the same condition as when first taken, and said defective return of said depositions has not been amended or cured in the manner authorized by law. And further, because the same were returned to the town of Llano by mail, express, or some other manner unknown to defendant, and again returned into this court through mail by said Oatman. This last motion, which was not verified, was overruled, to which defendant excepted. The following explanation is attached to the bill: "That when said order was granted permitting said depositions to be withdrawn for the purpose of permitting the officer who took the same to correct and amend his return thereof, the depositions had, since their receipt a few days prior thereto by the clerk, been in the possession of the court and the attorneys in the cause, and had no appearance of having been changed, altered or in any manner tampered with; that said depositions were thereupon, in accordance with said order and under the direction of the court, forwarded to said officer by due course of mail to Llano to amend and correct his return; and thereafter the return of said depositions was amended and corrected, and said depositions returned by said officer into said court through mail in an envelope, under seal, addressed to and received by the clerk of this court, the said envelope having the name of the officer taking the depositions written across the seal thereof, the officer's certificate thereon of depositing the same in the mail being in legal form, and showing that he in person deposited said envelope containing said deposition in the mail for transmission, and with the names of the parties to the suit written thereon as in the first in-

stance, as well as the names of all the witnesses whose depositions were therein contained. And that said depositions as so returned, when received into this court, did not appear to have been changed, altered or in any manner tampered with since they had left the possession of the court."

We think the ruling of the court, especially in view of the explanation attached to the bill, was correct. It seems, under the authorities, that a deposition may be withdrawn and irregularities corrected by the officer taking them made under the order of the court. Certainly this can be done in the presence of the court. In this instance it is not contended that the depositions themselves had been in any way tampered with or changed, but, on the contrary, they appeared to be the same as when first taken. The only changes made were those by the officer to his return in response to plaintiffs' motion (Knoxville Fire Ins. Co. v. Hird, 4 Texas Civ. App., 82; Gulf, C. & S. F. Ry. Co. v. Lyman, 65 S. W., 69.) We think the cases cited by appellant in support of his contention differ with the case at bar and do not conflict with the rule here announced. In the case of Millikin v. Smoot, 71 Texas, 760, it appears that the depositions were taken without notice to the opposite party, for which reason they were suppressed. Believing no error was committed in refusing to quash the depositions, we overrule this assignment.

The sixth, seventh and eighth assignments of error complain of the action of the court in permitting Mrs. Emma Phillips and Sam Phillips to testify to the average amount received by deceased from his farm work, and also the amount received by him from outside work. It is shown that these witnesses qualified themselves to testify relative to this matter by showing that they were intimately acquainted with the deceased, and knew of their own knowledge what returns he received from his work, and for this reason we think this evidence was permissible. See Tompkins v. Toland, 46 Texas, 590; International & G. N. R. R. Co. v. Kuehn, 2 Texas Civ. App., 215; Garteiser v. Galveston, H. & S. A. Ry. Co., 2 Texas Civ. App., 234; Louisville, E. & St. L. Ry. Co. v. Clarke, 152 U. S., 230; Arkansas Midland R. R. Co. v. Griffith, 39 S. W., 550; Abbott's Trial Evid. (2d ed.), p. 758, section 50.

The tenth assignment of error, which complains of the refusal of the court to permit appellant to read in evidence his motion asking for the appointment of a commission of competent physicians to exhume the body of the deceased and to make an autopsy thereon, is overruled. Certainly, if the motion itself ought not to have been granted, it was highly improper for the court to permit the same to be read to the jury.

The court did not err as complained of in the eleventh and twelfth assignments, in declining to permit Dr. Brownlee, who qualified as an expert, to testify relative to his opinion as to whether a 45-calibre pistol ball, striking a body just below the point of the right shoulder blade, would not pass diagonally through and out of the body, but would lodge therein, which evidence was offered in support of appellant's contention that the first shot went into the breast of deceased and not in the back. If we are correct in what we have heretofore

said relative to the autopsy, it seems to us that the ruling therein made would dispose of this question, because this evidence became immaterial, in the view that we have taken of the question there raised. Apart from this, we are inclined to believe that the opinion of said witness as to the question asked was not otherwise admissible under the facts and circumstances in evidence.

By his thirteenth and fourteenth assignments of error appellant complains of the charge of the court in not submitting to the jury his right to defend himself against an apparent attack upon him by the deceased. The charge, in our judgment, was a full and clear presentation of the law upon the subject, telling the jury that the defendant would have the right to defend himself from any attack made upon him by the deceased. The evidence showing in this case, if anything, an actual and not an apparent attack by the deceased upon the defendant, the charge was in all respects a proper presentation of the law of the case, and it was therefore not necessary to charge upon an apparent attack, as the evidence did not raise that issue. Besides this, if the charge was not as full as defendant desired, it was his duty to present a special charge incorporating his view of the law on the subject. Since in our judgment no error was committed in this respect, this assignment is overruled.

By his fifteenth assignment of error appellant complains generally of the charge of the court on the subject of provoking the difficulty. What we have heretofore said upon this subject makes it unnecessary for us to discuss this assignment, and it is therefore overruled.

By his seventeenth assignment appellant insists that the court erred in the following portion of its charge, to wit: "If you believe from the evidence in this case that the defendant provoked a difficulty with the deceased, as above explained to you, but you believe from the evidence that such difficulty was provoked (if any such was provoked) without any intention to kill or inflict serious bodily injury upon deceased, or if you have a reasonable doubt as to defendant's intention to kill or inflict serious bodily injury upon deceased, and you believe from the evidence that defendant by his acts or language, or both, did provoke a difficulty with deceased, which caused deceased to attack defendant, and the defendant, under the influence of sudden passion which rendered the mind of the defendant incapable of cool reflection, did shoot with a pistol and thereby kill the deceased, you are instructed that such killing would be unlawful, and if you find the facts so to be your verdict should be rendered accordingly." And by his first proposition thereunder it is contended that this part of the court's charge was in conflict with the preceding portion of the charge, and when the preceding portion of the charge referred to by the expression "as above explained to you," is read into it, the charge is unintelligible and confusing. We think, when taken in connection with the balance of the entire charge given to the jury, that no error is shown, but that, on the contrary, the charge given was an exceptionally fair and clear presentation of the law, in support of which we cite the cases heretofore mentioned under our discussion of the first assignment of error. Also the case of Bearden v. State, 46 Texas Crim. Rep., 144.

The eighteenth assignment of error complains of the charge of the court, because, as appellant contends, the same was an improper charge on the measure of damages. The charge given upon this subject is as follows: "If you find from the evidence and under the law given you in this charge for the plaintiffs, or either of them, you will assess their recovery of damages at such amount, if paid now, as would fully compensate them for the actual damages, if any, sustained by them, as shown by the evidence, and such as is fairly proportioned to the injury sustained, if any, and may include such pecuniary benefits as the plaintiff Mrs. Emma Phillips had a reasonable expectation of receiving from the deceased, Will Phillips, had he lived, and in addition to such pecuniary benefits to the plaintiffs Sadie Phillips, Ray Phillips, Dale Phillips and Ada Phillips, you may also include the reasonable value of the nurture, care and education that such children would have received from such parent had he lived, if any they would have received, provided you find such four last-named plaintiffs to be minors and entitled thereto, and if you find for plaintiffs, or any of them, any damages whatever, you will not allow actual damages for any other purpose than as above enumerated in this paragraph of this charge." And by his proposition thereunder appellant insists that the true measure of damages is such sum as would, if paid now, compensate plaintiffs for the pecuniary benefits they had a reasonable expectation of receiving from deceased *had he not been killed by defendant,* taking into consideration *the uncertainties of human life,* and the court erroneously instructed the jury that such was the measure of damages with the uncertainties of human life eliminated. Appellant insists that there is a difference in meaning between the expressions "had he lived," as contained in the court's charge on the measure of damages, and the expression "had he not been killed by defendant," which should have been used in lieu thereof, because Will Phillips, had he not been killed by defendant, would still have been surrounded by the uncertainties of human life, etc., and benefits to be derived by plaintiffs from him were necessarily limited by the uncertainty of the duration of his life.

We are inclined to believe that the charge as given was correct, and that the objection urged thereto was hypercritical. In the case of International & G. N. Ry. Co. v. McVey, 99 Texas, 28, a charge similar to the one under consideration, relative to the nurture, maintenance and education that a father was supposed to give to his children, was approved. We therefore overrule this assignment.

The other assignments which complain of the action of the trial court in overruling certain exceptions presented to the petition and in failing to give certain special charges, are all overruled, because we think that the ruling of the court in these respects was correct.

Feeling that the judgment of the court below is amply sustained by the evidence, and is not excessive, and finding no reversible error in the record, the same is in all things affirmed.

*Affirmed.*

Writ of error refused.